STATE OF NEBRASKA, APPELLEE, V. WAYNE F. SEVERIN, APPELLANT.

553 N.W.2d 452

Filed September 27, 1996.   No. S-95-1253.

William G. Line for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

WHITE, C.J., CAPORALE, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ., and QUIST, D.J.

CAPORALE, J.

## I. STATEMENT OF CASE

Pursuant to verdict, the district court adjudged the defendant-appellant, Wayne F. Severin, guilty of having been an accessory to a felony, in violation of Neb. Rev. Stat. § 28-204 (Reissue 1995), and sentenced him to imprisonment for a period of 30 days and payment of a $3,000 fine. We granted Severin's motion to bypass the Nebraska Court of Appeals, and he asserts that the district court erred in failing to (1) declare § 28-204 unconstitutional both facially and as applied, (2) direct a verdict in his favor, and (3) grant him a new trial. We affirm.

## II. FACTS

In order to appreciate the relevant facts, we must first have in mind the language of § 28-204, which reads:

(1) A person is guilty of being an accessory to felony if with intent to interfere with, hinder, delay, or prevent

the discovery, apprehension, prosecution, conviction, or punishment of another for an offense, he:

(a) Harbors or conceals the other; or

(b) Provides or aids in providing a weapon, transportation, disguise, or other means of effecting escape or avoiding discovery or apprehension; or

(c) Conceals or destroys evidence of the crime or tampers with a witness, informant, document, or other source of information, regardless of its admissibility in evidence; or

(d) Warns the other of impending discovery or apprehension other than in connection with an effort to bring another into compliance with the law; or

(e) Volunteers false information to a peace officer; or

(f) By force, intimidation, or deception, obstructs anyone in the performance of any act which might aid in the discovery, detection, apprehension, prosecution, conviction, or punishment of such person.

(2) Accessory to crime is a Class IV felony if the actor knows of the conduct of the other and such conduct constitutes a felony of any class.

After receiving information that Kelly Thirtle, a suspect in a forgery case, might be at the Severin residence and that Severin might know of her whereabouts, Lt. Greg Chamberlain and Officer Joyce Heinke of the Fremont Police Department went to the Severin residence on March 10, 1995, arriving at about 2 p.m. Chamberlain told Severin that they were looking for Thirtle and informed Severin that there were both a misdemeanor and a felony warrant for Thirtle's arrest. After advising Severin that the felony warrant was for the sexual assault on a child, Chamberlain showed him a photograph of Thirtle and asked if Severin knew her. Severin acknowledged that he did and explained that Thirtle had been on the premises the day before, but that she was not there currently.

Later that same day, at around 9 p.m., Officer Howard Hanson went to the Severin residence to see if Thirtle was there. After parking some distance from the house, Hanson walked to the house, looked in the window, and saw Thirtle in the kitchen with two men. Hanson then left the area and

radioed for Officer Eric Nordby to come and assist him in arresting Thirtle.

Once Nordby arrived, he and Hanson walked back to the house and looked through the window again. Seeing Thirtle, they began to make plans to arrest her. Nordby stayed outside and kept an eye on the inside of the house through the window; Hanson went to the front of the house and knocked on the door.

After Hanson knocked, he heard the doorknob rattling as if someone was trying to open the door. The person behind the door then said, "[W]ait a minute," and everything became quiet. The person then said, "[W]ait a minute" again, whereupon Hanson looked over at Nordby and asked whether Thirtle was running or hiding. After Nordby told Hanson that she was running, Hanson told Nordby to go get her. Nordby went around to the back of the house, where he encountered Thirtle. Nordby identified himself as a police officer and instructed Thirtle to stop. Instead, Thirtle ran back into the house; Nordby pursued her into the kitchen, where she was apprehended. The same two men, Lloyd Behrens and Guadalupe Pacheco, were also in the kitchen at that time.

While Nordby was chasing Thirtle, Severin had gone to the door and opened it. Hanson explained to Severin that he needed to talk to Thirtle. Severin said that Thirtle was not there. After Hanson insisted that Thirtle was there, Severin opened the door and motioned for him to enter. Hanson went into the kitchen and discovered Thirtle, along with Nordby, Behrens, and Pacheco. At approximately 10:20 p.m., Chamberlain was called to the Severin residence, after which Thirtle was arrested, along with Behrens.

Severin successfully moved to quash the initial information filed against him; an amended information was then filed, and Severin stood mute at his arraignment thereon. At that point, the district court entered a not guilty plea on Severin's behalf.

At trial, Chamberlain, Heinke, Hanson, and Nordby testified to the events that transpired on March 10, 1995, as detailed earlier. The prosecution also called Thirtle, who testified that she had been in the kitchen at the Severin residence with Behrens and Pacheco for only about 20 or 30 minutes

before the police arrived. Thirtle did not remember whether Severin entered the kitchen before or after the police showed up. She explained that she was not running from the officers, but that she was going to leave at that time anyway. She left after she had spoken to Severin but before the police had arrived and, as she had not seen Severin after the police arrived, did not think that he knew she was still in the house. Thirtle stated that she did not discuss with Severin the charges which led to her incarceration. After Thirtle's testimony, the State rested, and Severin unsuccessfully moved for a directed verdict.

Severin then took the stand and confirmed that two police officers came to his door on March 10, 1995, and told him that they had arrest warrants for Thirtle. Severin told the police that she was not there and that he had not seen her recently. Thirtle then showed up at around 3 or 4 p.m., at which time he asked her about the warrants. She told him that "she was definitely wanted" by the police, but that it was all a mistake, that she was on probation, and that there should be no warrants for her arrest. Severin told Thirtle that she could not come around until she got her troubles taken care of because he had "some children that [he] was trying to get ahold of" and did not need any more trouble. Severin then asked Thirtle to leave, and as far as he knew, she did.

Severin testified that he next saw Thirtle when the officers came knocking at his door at around 10 p.m. According to Severin, he had gone to bed at about 9 or 9:30 p.m. On hearing the knocking, he got up and attempted to answer the door, which did not open easily, and he had some difficulty. As he was trying to get the door open, Severin asked who was there. The officers explained that they were the police, that they had talked to him before, and that they were there for Thirtle. When he could not get the door open, Severin turned around to go into the kitchen and saw Thirtle standing there.

Severin testified that he did not know Thirtle was there until that time. He went over to Thirtle and asked her what she was doing there. He then told her that the police were at the door. Thirtle asked Severin what to do, and he replied, "I person-ally don't know what you are going to do; but I am going to

go answer the front door." Severin then left the room and opened the door. He admitted that when he opened the door, he told the officers that Thirtle was not there and explained that he expected Thirtle would not be there because he had told her to leave.

After resting his case, Severin unsuccessfully renewed his motion for a directed verdict. At the jury instruction conference, Severin took exception to the portion of the instruction defining the elements of the offense which advised that Severin "knew of the conduct of . . . Thirtle; and such conduct constitutes a felony."

## III. ANALYSIS

### 1. CONSTITUTIONALITY

Severin first asserts that § 28-204 is unconstitutional both facially and as applied.

### (a) Scope of Review

Whether a statute is constitutional is a question of law; accordingly, an appellate court is obligated to reach a conclusion independent of the decision reached by the court below. See *State v. Kelley*, 249 Neb. 99, 541 N.W.2d 645 (1996). See, also, *Friehe v. Schaad*, 249 Neb. 825, 545 N.W.2d 740 (1996).

### (b) Application of Law

The proper way to challenge the facial validity of a statute is by a motion to quash or by demurrer. See Neb. Rev. Stat. §§ 29-1808 and 29-1810 (Reissue 1995). As first noted in part II, Severin did neither as to the operative amended information. Rather, he stood mute during the arraignment thereon, and as a consequence, the district court entered a plea of not guilty on his behalf.

Neb. Rev. Stat. § 29-1812 (Reissue 1995) provides that a defendant who pleads to the general issue waives all defects which might have been attacked by a motion to quash. *State v. John*, 213 Neb. 76, 328 N.W.2d 181 (1982); *State v. Etchison*, 190 Neb. 629, 211 N.W.2d 405 (1973). This statute has long been interpreted to include the situation where a plea is entered for the defendant by the court. *Etchison, supra*; *Huette*

*v. State*, 87 Neb. 798, 128 N.W. 519 (1910); *Trimble v. State*, 61 Neb. 604, 85 N.W. 844 (1901). It is therefore clear that Severin waived his right to challenge the facial validity of § 28-204. As a result, we do not consider Severin's facial challenge.

Left for consideration, then, is Severin's application challenge. Although in this regard he urges that, as applied, the statute is both overbroad and vague, Severin does not detail in what manner the statute is overbroad. Our general rule is that absent plain error, assignments of error not discussed in the briefs will not be addressed by this court. *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993). See, also, *McWhirt v. Heavey, ante* p. 536, 550 N.W.2d 327 (1996). We therefore do not reach Severin's overbreadth claim.

This leaves only Severin's claim that, as applied, § 28-204 is unconstitutionally vague. In connection with this claim, Severin maintains that the phrase "conduct constituting a felony" has no generally accepted meaning. However, before we can address the merits of this claim, we must determine whether Severin has standing to raise the issue.

In order to challenge a statute on the ground of vagueness, one must not have engaged in conduct which is clearly proscribed by the statute and cannot complain of the vagueness of the law as applied to the conduct of others. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987). Thus, as a preliminary matter we must determine whether Severin's conduct was clearly prohibited by the statute.

As noted in part II, the statute makes acting as an accessory a crime "if the actor knows of the conduct of the other and such conduct constitutes a felony of any class." The plain meaning of this provision is that the knowledge requirement is satisfied if one knows of the conduct of the other. A reasonable person could not understand this language as requiring that the accessory have personal knowledge of the specific facts of the other's conduct or that the other's conduct constitutes a felony; it is enough if the accessory was reliably informed of the conduct.

Chamberlain and Heinke had informed Severin that they were looking for Thirtle and that they had two warrants for her

arrest. Chamberlain also told Severin that one of the warrants was for a felony sexual assault on a child. This evidence, together with the evidence that when Thirtle returned to Severin's residence in the afternoon she told Severin that she was wanted by the police, if believed by the jury, establishes beyond a reasonable doubt that Severin had the knowledge required of an accessory.

### (c) Resolution

Accordingly, there is no merit to the first assignment of error.

### 2. DIRECTED VERDICT

Severin next asserts that the district court erred in overruling his motion for a directed verdict. Although not entirely clear, it appears that Severin argues that at the close of all the evidence, there was "no evidence that [he] affirmatively did anything unlawful." Brief for appellant at 8.

### (a) Scope of Review

In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994); *State v. Hirsch*, 245 Neb. 31, 511 N.W.2d 69 (1994).

### (b) Application of Law

The State contends that this claimed error is improperly assigned because Severin adduced evidence after his motion for a directed verdict at the close of the State's evidence was overruled. In support of its position, the State cites *State v. Gray*, 239 Neb. 1024, 479 N.W.2d 796 (1992), which does hold that a defendant who moves for a directed verdict at the close of the State's case and proceeds with trial waives any error in the ruling on that motion, but may challenge the sufficiency of the evidence for the defendant's conviction. But as we noted in *Hirsch, supra*, a distinction must be made between the situation in *Gray* and one wherein a second motion for directed verdict is made at the conclusion of all the evidence.

When a defendant makes a motion at the close of the State's case in chief and again at the conclusion of all the evidence, it is proper to assign as error that the defendant's motion for directed verdict made at the conclusion of all the evidence should have been sustained. *Hirsch, supra.* See *State v. Tingle*, 239 Neb. 558, 477 N.W.2d 544 (1991). In the present case, Severin renewed his motion for directed verdict at the end of the trial, and it was therefore proper for him to assign the overruling of that motion as error.

However, regardless of whether the evidence is direct, circumstantial, or a combination thereof, an appellate court, in reviewing a criminal conviction, does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact; a conviction will be affirmed in the absence of prejudicial error if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Newman, ante* p. 226, 548 N.W.2d 739 (1996); *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995); *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995).

We have already considered the knowledge element. The evidence in that regard, as detailed previously, is such that if believed, the jury could find that the State established each element of the offense defined by § 28-204 beyond a reasonable doubt.

### (c) Resolution

Consequently, there is no merit to the second assignment of error.

### 3. NEW TRIAL

Finally, Severin urges that the district court should have set aside the verdict and granted him a new trial not only because the evidence does not support the conviction, but because the jury obviously ignored the instruction that "[t]he fact that the State has brought these charges is not evidence of anything."

### (a) Scope of Review

The standard of review for the denial of a motion for new trial is whether the trial court abused its discretion in denying

the motion. See *Hirsch, supra.* An abuse of discretion means that the reasons for the ruling are untenable and unfairly deprive a litigant of a substantial right and deny a just result in the matter submitted for disposition. *State v. Atwater,* 245 Neb. 746, 515 N.W.2d 431 (1994).

### (b) Application of Law

Having determined, contrary to Severin's contention, that the evidence does support the conviction, we turn our attention to Severin's contention that the jury ignored the instruction that mere charges constitute no evidence of a crime. Severin postulates that the jury obviously concluded that "the fact that Thirtle was charged with a felony sexual offense was . . . evidence that [he] knew the actions and conduct of . . . Thirtle that allegedly constituted the felony sexual offense." Brief for appellant at 9.

Severin apparently misunderstands the purpose of the instruction at issue, which was to inform the jury that the charges against him were not evidence of his guilt. The questioned instruction did not pertain to the charges against Thirtle.

However, the fact that the police advised Severin that warrants for the arrest of Thirtle had been issued constituted evidence upon which the jury could rely in concluding that Severin knew of Thirtle's conduct.

### (c) Resolution

Thus, the last assignment of error is as meritless as the first two.

### IV. JUDGMENT

We therefore, as foreshadowed in part I, affirm the judgment of the district court.

AFFIRMED.

FAHRNBRUCH, J., not participating.