STATE OF NEBRASKA, APPELLEE, V.
MARK E. ANDERSON, APPELLANT.
626 N.W. 2d 627

Filed May 8, 2001. No. A-00-917.

Thomas C. Riley, Douglas County Public Defender, and Timothy P. Burns for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

SIEVERS, Judge.

This appeal concerns an issue of apparent first impression. We decide the extent of knowledge an accused accessory to first

degree murder must have about the actual killer before he can be convicted of being an accessory. The factual backdrop is that the defendant lied when he told police who murdered Carr Hume, an elderly Omaha resident, because the defendant had no knowledge of who really was the killer.

## BACKGROUND

On September 24, 1999, Catherine Martinec, an automobile theft detective with the Omaha Police Department, was dispatched to Bellevue, Nebraska, to interview Mark E. Anderson concerning an automobile theft ring. Anderson, 17 years old at the time, had been arrested earlier that day in Bellevue driving a stolen 1997 tan Cadillac. Anderson told Bellevue detectives that he wanted to provide information about an automobile theft ring operating in Omaha, Douglas County, Nebraska. Bellevue police then contacted the Omaha Police Department, and Martinec was sent to interview Anderson.

At the Bellevue Police Department, Anderson spoke to Martinec about the automobile theft ring. Anderson told Martinec that he had been riding around in the stolen Cadillac with two others referred to as "Randell" and "Pookie," who had robbed and shot a man in South Omaha near 42d and Bancroft Streets. Anderson later identified "Pookie" from a police photograph array as Shannon Smith and "Randell" as Randell Fields. Suspecting that Anderson was speaking of the murder of Hume, which had occurred a week earlier near 42d and Bancroft Streets in Omaha, Martinec called in two homicide detectives from the Omaha Police Department. Anderson told Martinec that he heard about the murder of Hume on the news.

The homicide detectives then interviewed Anderson about the murder of Hume. Again, Anderson stated that he, Fields, and Smith were riding around in the stolen Cadillac on the day Hume was murdered. While driving on 42d Street, they were looking for someone to rob when they came across an "older" man walking along the sidewalk. According to Anderson, while he and Smith remained in the car, Fields got out of the car and tried to rob the man, but ended up shooting him when the man resisted.

Later that day, after Anderson stated that he knew where the murder weapon and a stolen car were located, the homicide

detectives brought Anderson back to Douglas County to look for the murder weapon and the car. Following Anderson's direction, the detectives found the car, but could not find a gun. Anderson also gave the detectives addresses and physical descriptions for Fields and Smith.

Based on the information given by Anderson, the detectives obtained arrest warrants for Fields and Smith. On September 28, 1999, Fields and Smith turned themselves in to the Omaha Police Department, where they were booked on murder charges. On the same day, after the arrest of Fields and Smith, one of the detectives received a call from an anonymous female who told them that the wrong people had been arrested for Hume's murder. This female later came down to police headquarters and told the detectives that a man named "Arlyn Ildefonso" had told her that he murdered Hume. She also provided the names of two eyewitnesses who would corroborate her statement. On October 1, 1999, Ildefonso was arrested, and Fields and Smith were released. Ildefonso was later convicted of murdering Hume.

Upon learning the new information about Ildefonso, the detectives interviewed Anderson a third time. Anderson admitted that he had lied to detectives and made up the story about the involvement of Fields and Smith in Hume's murder. Anderson stated that he lied because he was scared of Fields and Smith and wanted to "pay them back." Anderson also stated that he received all the information concerning the Hume murder from television and newspaper accounts of the murder.

Anderson was charged with being an accessory to first degree murder, a Class IV felony. Neb. Rev. Stat. § 28-204(2)(e) (Cum. Supp. 2000). In relevant part, the information citing § 28-204 alleged that Anderson,

> with the intent to interfere with, hinder, delay or prevent the discovery, apprehension, prosecution, conviction or punishment of another person for the offense of First Degree Murder, did then and there volunteer false information to a peace officer or by . . . deception, obstructs [sic] anyone in the performance of any act which might [aid in] the discovery, detection, apprehension, prosecution, conviction, or punishment of such person[.]

Following a bench trial, the district court for Douglas County found Anderson guilty. In finding that Anderson had both volunteered false information and obstructed police investigation through deception, the court made the following key factual finding: "After a tip to the police department and further investigation, *another person unknown to the defendant* was arrested and charged with the murder of Carr Hume and was later convicted after trial to a jury." (Emphasis supplied.) The court later sentenced Anderson to 20 months' to 5 years' imprisonment. Anderson appeals.

## ASSIGNMENT OF ERROR

Anderson's single assignment of error is that the evidence presented at trial was insufficient to sustain his conviction for being an accessory to a felony.

## STANDARD OF REVIEW

■ Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Neiss*, 260 Neb. 691, 619 N.W.2d 222 (2000).

Regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard of review is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Toof*, 9 Neb. App. 535, 616 N.W.2d 32 (2000). Only where evidence lacks sufficient probative value as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *State v. Ramsay*, 257 Neb. 430, 598 N.W.2d 51 (1999).

## ANALYSIS

*Introduction.*

The State's information alleged that Anderson was an accessory based upon his volunteering false information or his decep-

tion which obstructed police investigation. Nebraska's accessory to a felony statute, § 28-204, as relevant in this case, provides:

> (1) A person is guilty of being an accessory to felony if with intent to interfere with, hinder, delay, or prevent the discovery, apprehension, prosecution, conviction, or punishment *of another* for an offense, he or she:
>
> . . . .
>
> (e) Volunteers false information to a peace officer; or
>
> (f) By . . . deception, obstructs anyone in the performance of any act which might aid in the discovery, detection, apprehension, prosecution, conviction, or punishment of such person.
>
> (2)(a) . . . .
>
> . . . .
>
> (e) Accessory to felony is a Class IV felony if the actor violates subdivision (1)(d), (1)(e), or (1)(f) of this section, the actor *knows of the conduct of the other*, and the conduct of the other constitutes a felony of any class other than a Class IV felony.

(Emphasis supplied.) Thus, under the essentially undisputed facts of this case, Anderson must have (1) volunteered false information to the police or obstructed police investigation by deception; (2) had the intent to interfere with, hinder, delay, or prevent the discovery, apprehension, prosecution, conviction, or punishment "of another"; and (3) had knowledge "of the conduct of the other." The issue in this case centers around the language quoted above in § 28-204(1), which requires an intent to interfere with the prosecution or investigation "of another," and in § 28-204(2)(e), which requires that an accessory know "of the conduct of the other."

*What Must an Accessory Know?*

The Supreme Court construed the knowledge requirement under § 28-204 in *State v. Severin*, 250 Neb. 841, 553 N.W.2d 452 (1996), where an accused accessory who gave false information to police challenged § 28-204 as unconstitutionally vague. Under the version of § 28-204 in effect at the time, being an accessory to a crime was a Class IV felony "if the actor knows of the conduct of the other and such conduct constitutes a felony of any class." The *Severin* court held:

> The plain meaning of this provision is that the knowledge requirement is satisfied if one knows of the conduct of the other. A reasonable person could not understand this language as requiring that the accessory have personal knowledge of the specific facts of the other's conduct or that the other's conduct constitutes a felony; it is enough if the accessory was reliably informed of the conduct.

250 Neb. at 847, 553 N.W.2d at 457. Under the statute in effect at the time, being an accessory was always a Class IV felony no matter how serious the underlying crime. In 1999, the Legislature enhanced the penalties for being an accessory depending on both the nature of the aid rendered to the felon and the grade of offense committed by the principal felon. Neither of these changes impact the viability of the *Severin* court's statement about the knowledge element under § 28-204.

■ Anderson contends that *Severin* "clearly holds that the defendant being charged with being an accessory must know of the specific person police are looking for or is involved in the crime." Brief for appellant at 16. However, like the language used in § 28-204, the clear holding from *Severin* requires that an accessory to a felony need only be reliably informed of the general nature "of the conduct of the other." In *Severin*, the defendant already knew the specific person for whom the police were looking. Thus, the focus was on the extent of the accessory's knowledge of "the other's" *conduct* rather than whether an accessory must know of the felon's *identity*. Thus, while we do not wholeheartedly embrace Anderson's interpretation of *Severin*, the decision still serves as a guidepost for our analysis. *Severin* is the only Nebraska case construing the knowledge element of § 28-204. Thus, we must interpret what it means to have the intent to hinder discovery or prosecution "of another" and to "know of the conduct of the other" under § 28-204.

■ It is a fundamental principle of statutory construction that penal statutes are to be strictly construed. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000). Penal statutes are construed with such strictness in order to safeguard the defendant's rights. 73 Am. Jur. 2d *Statutes* § 295 (1974). Furthermore, penal statutes are given a sensible construction in the context of the object sought to be accomplished, the evils

and mischiefs sought to be remedied, and the purpose sought to be served. *State v. White*, 254 Neb. 566, 577 N.W.2d 741 (1998).

Applying the interpretation in *Severin* of § 28-204, the issue becomes whether general, reliably-informed knowledge of the felon's (the "other's") conduct includes the requirement that the accessory know the felon's identity. The State argues that under the plain language of § 28-204, there is no requirement that an accessory know of the principal felon. The State, therefore, contends that the statute's use of the terms "the other" and "another" are generic references and that an accessory need not know of the principal felon's identity as long as he or she generally knows "of the conduct of the other." As we understand it, the State, therefore, concludes that it was enough that Anderson knew that Hume had been murdered. On the other hand, Anderson contends that § 28-204 requires that a defendant know who "the other" is before he can be an accessory to that "other's" felony. Anderson argues that he did not know of the identity of Hume's murderer and that therefore, there is insufficient evidence to sustain his conviction for being an accessory to first degree murder. While he admits to having lied to police, he argues that this conduct, unaccompanied with knowledge of the murderer's identity, amounts to false reporting under Neb. Rev. Stat. § 28-907 (Cum. Supp. 2000), a misdemeanor, rather than accessory to a felony. Neither party has cited any authority from Nebraska or any other jurisdiction deciding whether an accessory must know who the principal offender is in order to be an accessory in a case of false information given to the police. Thus, some background for § 28-204 is needed.

At common law, participants in a homicide who lend aid and encouragement while another, the principal, does the killing are classified as accessories. 40 Am. Jur. 2d *Homicide* § 25 (1999). This category includes accessories after the fact, meaning those persons who in some manner are connected with a crime after its perpetration. *Id.* An accessory after the fact is a person who, knowing that a felony has been committed, intentionally receives, relieves, comforts, or assists the felon, or in any manner aids the felon to escape arrest or punishment. *Id.* At common law, accessory liability requires the accessory to know that "a completed felony was committed, and that the person aided was

the guilty party." 21 Am. Jur. 2d *Criminal Law* § 209 at 275-76 (1998). See, also, *Manley v. Commonwealth*, 222 Va. 642, 283 S.E.2d 207 (1981) (under common law, accessory after fact must know that felon is guilty and must have direct or implied notice at time he assists felon that felon committed felony). "The common law emphasized, as a basis for liability, the personal relationship between principal and accessory." *Commonwealth v. Devlin*, 366 Mass. 132, 136, 314 N.E.2d 897, 900 (1974). Under common law, accessorial liability "rested on the notion that one who helps an offender avoid justice becomes in some sense an accomplice in the original crime." Model Penal Code and Commentaries § 242.3 at 224 (1980).

Black's Law Dictionary 16 (7th ed. 1999) defines an accomplice as "[a] person who knowingly, voluntarily, and intentionally unites with the principal offender in committing a crime and thereby becomes punishable for it." "One guilty of accessory after the fact was, in effect, derivatively liable for the underlying crime. Consistent with the notion of derivative liability, the accessory had to have knowledge that the principal committed the crime," and the principal had to be tried and convicted first. *State v. Allred*, 165 Or. App. 226, 232, 995 P.2d 1210, 1213 (2000). A prosecution for "hindering prosecution," a crime different from common-law accessory after the fact, is intended to prevent the obstruction of justice and thus does not require that the offender know that he or she is aiding someone who in fact committed a crime. *Id.* at 231, 995 P.2d at 1213. The *Allred* court points out that the Model Penal Code, which Oregon largely uses in its hindering prosecution statute, broke decisively from the common-law tradition of accessorial liability. While some states, such as Oregon, have replaced the common-law offense of accessory after the fact with the Model Penal Code's "hindering prosecution" approach, which does not require proof that the accused was aware that the principal offender actually committed a crime, Nebraska "adhere[s] to the common law approach by requiring that the defendant have known of the guilt of the person aided." See 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 6.9 at 172 (1986).

■ With the foregoing background in mind, we return to the language of § 28-204. Subsection (2) of that statute provides for

different penalties depending on the grade of offense committed by the principal felon. For each penalty class (six in total), the accused must know "of the conduct of the other." The article-modifier "the" accompanies the pronoun "other," which refers to the felon purportedly aided by the accessory's conduct, indicating that an accessory must know of a specific felon's conduct, and not simply the conduct of anyone, as subsection (1) may imply with its reference to "anyone." Knowing of a specific felon's conduct necessarily implies that one must know who that specific felon is.

We have not found any cases discussing what knowledge an accessory must have when he or she does not know who the principal offender is. (Perhaps that is because Anderson's conduct, as would be true in similar cases, intuitively strikes one as false reporting—not being an accessory—which could explain the dearth of reported decisions with like fact patterns.) Nonetheless, cases from other jurisdictions with accessory statutes similar to Nebraska's § 28-204 support the conclusion we reach that an accessory must know of the principal felon's identity. For example, in interpreting Kansas' accessory statute criminalizing aid to "any person" who has committed a felony, the Kansas Supreme Court held that the accused must have personal knowledge that "the principal committed the felony" or at least have knowledge of facts giving the accused good reason to believe the person being assisted is guilty of a felony. *State v. Rider, Edens & Lemons*, 229 Kan. 394, 402, 625 P.2d 425, 432 (1981). Under Colorado's accessory statute penalizing aid to "another" by means including hindering apprehension or prosecution by deception, the Colorado Supreme Court held that the relevant standard for knowledge is whether the defendant knew the principal had committed a crime. *People v. Young*, 192 Colo. 65, 555 P.2d 1160 (1976). In interpreting Minnesota's common-law-based accessory after the fact statute, the Minnesota Court of Appeals reasoned that because the accessory after the fact statute bases punishment on the underlying offense, it would be inequitable to charge a defendant for aiding in a particular crime if the defendant does not know the person he is aiding has committed that crime. *Matter of Welfare of A.C.N.*, 583 N.W.2d 303 (Minn. App. 1998). In *Matter Welfare of A.C.N.*, a juvenile was

riding in the back seat of a Toyota when its driver shot and killed a passenger in another vehicle. Even though there was no evidence that the juvenile knew that the shooting resulted in a homicide, he was convicted for aiding an offender in a driveby shooting. Again, because the juvenile knew the driver's identity, the issue in that case was whether the juvenile had to know that the driver's shooting resulted in a death and not whether the juvenile knew of the driver's identity.

Admittedly, some state accessory statutes contain more precise language concerning the requisite knowledge requirements than Nebraska's § 28-204. For example, in *Commonwealth v. Devlin*, 366 Mass. 132, 133 n.2, 314 N.E.2d 897, 898 n.2 (1974), the Supreme Court of Massachusetts held that the plain meaning of its accessory statute penalizing anyone who aids "the principal felon . . . knowing that he has committed a felony," requires that the accessory know the principal felon's identity.

However, despite differences in statutory language, it is worth noting that a number of courts interpreting statutes based upon the common-law offense of accessory after the fact imply that an accessory must know who he or she is purportedly aiding. See, *The People v. Jordan*, 337 Ill. 422, 169 N.E. 205 (1929) (accessory statute requires proof that accessory had knowledge of felon's guilt); *The People v. Haskins*, 337 Ill. 131, 169 N.E. 18 (1929) (essential element of crime of accessory after fact was that accused knew or believed, upon rendering aid to wrongdoer, that wrongdoer had committed crime charged in indictment); *Maddux v. Commonwealth*, 349 S.W.2d 686 (Ky. 1960) (accessory need only have actual knowledge of facts giving him good reason to believe person assisted is felon); *State v. Chism*, 436 So. 2d 464 (La. 1983) (accessory after fact must aid offender .personally, knowing or having reasonable ground to believe that he has committed felony)*; State v. Clifford*, 263 Or. 436, 439, 502 P.2d 1371, 1373 (1972) (quoting "1 Bishop on Criminal Law [516-517] (2d ed 1858)," true test is whether defendant's aid " 'was done by way of personal help to his principal, with the view of enabling the principal to elude punishment . . .' "); *Clark v. State*, 159 Tex. Crim. 187, 194, 261 S.W.2d 339, 344 (1953) (quoting *Dent v. State*, 43 Tex. Crim. 126, 65 S.W. 627 (1901), defendant's knowledge of underlying

offense "need not be 'full perfect and absolute consciousness of all the salient features of the evidence going to show the principal's guilt,' but there must be knowledge that an offense has been committed and that the principal committed the same"); *State v. Bradford*, 199 W. Va. 338, 484 S.E.2d 221 (1997) (accessory must have direct or implied notice at time assistance is rendered that felon has committed felony).

 Based on the foregoing authority and our reading of the language of § 28-204, we hold that "knows of the conduct of the other" as required by *State v. Severin*, 250 Neb. 841, 553 N.W.2d 452 (1996), necessarily includes knowledge of the identity of the person an accused accessory aids. It is the knowledge of the identity of "the other," together with aid given to that person, as defined in § 28-204, which makes the former a felony, whereas a mere lie, such as Anderson's, even though it hinders an investigation, is just a misdemeanor offense of false reporting under § 28-907. A person commits the offense of false reporting if he or she "[f]urnishes material information he or she knows to be false to any peace officer or other official with the intent to instigate an investigation of an alleged criminal matter or to impede the investigation of an actual criminal matter." § 28-907(1)(a).

Clearly, Anderson volunteered material and false information to police, conduct which seems to constitute either the misdemeanor offense of false reporting or the felony of accessory to a felony, depending on what additional contextual facts were present. The key distinguishing fact between the two crimes is whether Anderson knew or had reliable, general information to believe that Hume was killed by Ildefonso. Ildefonso is, of course, "the other" who would be aided by an accessory telling police a story that Fields and Smith were the killers. But, there was no evidence introduced, nor assertion by the State, that Anderson knew anything about Ildefonso or his involvement in Hume's death.

We digress to note that false reporting is not a lesser-included offense of accessory to a felony, because there are a number of ways listed in the accessory statute in which one can unlawfully help a felon avoid arrest, including the giving of false information, whereas false reporting can only be committed by volun-

teering false information. See *State v. Arthaloney*, 230 Neb. 819, 433 N.W.2d 545 (1989) (to be lesser-included offense, elements of lesser offense must be such that it is impossible to commit greater without at same time committing lesser). Both accessory to a felony and false reporting proscribe similar conduct, the giving of false information to police. And both statutes have a similar intent element, to impede or hinder investigation or prosecution by those charged with those duties, although the accessory statute proscribes other methods of aid to the felon. However, the two offenses differ starkly as to the knowledge element: False reporting requires that one know the information he or she furnishes is in fact false, while accessory liability requires knowledge of the principal offender's conduct when volunteering false information to police or when obstructing police investigation by deception. Thus, false reporting is not a lesser-included offense of accessory to a felony.

■ In addition to different knowledge elements, the two statutes have different purposes. The underlying purpose of the false reporting statute is to prevent the public from willfully furnishing erroneous information to law enforcement officers and thus interfering with the performance of their duties. *State v. Ewing*, 221 Neb. 462, 378 N.W.2d 158 (1985). On the other hand, the purpose behind the offense of accessory to a felony is to prevent the accessory from helping a specific person, whom the accessory knows and when the accessory has generally reliable information of the other person's commission of a felony, avoid arrest and conviction. See, also, *State v. Ives*, 37 Conn. App. 40, 654 A.2d 789 (1995) (purpose of accessorial liability is to impose alternative liability on those who solicit or aid others in commission of crimes). Furthermore, false reporting to a peace officer under § 28-907 is a misdemeanor, whereas false reporting to a peace officer under the accessory to felony statute is a felony (unless the principal offender's conduct constitutes a Class IV felony when it is a misdemeanor). Given the fact that Nebraska has two similar statutes proscribing the same conduct, while differing in the requisite state of knowledge and the penalties, there must be some intentional conduct which justifies the greater penalty for accessory to felony. In short, to convict of the felony of accessory there must be some state of the actor's

knowledge which makes deception and lying to police more serious than simply false reporting under § 28-907, which is only a misdemeanor.

We must give the accessory to felony statute a strict yet sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. *State v. White*, 254 Neb. 566, 577 N.W.2d 741 (1998). Requiring reliable knowledge of the felon's identity under the requirement that an accessory have general knowledge "of the conduct of the other" serves the purpose of the statute by penalizing those who intentionally "combine" with one they know to help them avoid prosecution, while at the same time preserving the less serious offense of false reporting even though one's false information leads police astray, but not to the potential benefit of a particular person. From a societal viewpoint of punishing more harshly the more culpable and harmful conduct, it is clear that it is a more serious offense to help a person known to be a wanted criminal, than to simply lie to the police in a generic sense about a crime for purposes besides aiding the guilty party with whom one is acquainted in avoiding arrest and conviction. Our false reporting and accessory statutes follow this notion by making the former a misdemeanor and the latter a felony. Therefore, for these reasons we conclude that an accessory must have reliable knowledge of "the other's" (the principal's) identity. We turn to the sufficiency of the evidence.

*Sufficiency of Evidence.*

To be an accessory to a felony under the grounds alleged in the State's petition, Anderson must have either volunteered false information to the police or obstructed the police officers in their investigation by deception. During police interviews, on his own initiative, Anderson falsely accused Fields and Smith of murdering a man later identified as Hume and providing details about how the murder occurred and where the gun was disposed of. Until the telephone call from the anonymous source, Anderson obviously led the Omaha Police Department astray with his false accusations against Fields and Smith. Clearly, Anderson both volunteered false information to the police offi-

cers and obstructed their investigation of the Hume murder through his deception.

Anderson argues that he was scared and wanted to "pay back" his cohorts Fields and Smith who had been threatening him. However, while the State must prove that the defendant's purpose was to hinder apprehension or prosecution of a felon, the State need not prove that this was the defendant's sole intent. See *State v. Wayne Kelley*, 120 N.H. 14, 413 A.2d 300 (1980). The evidence was that Anderson, a 17-year-old at the time, voluntarily lied to the police by wrongly accusing Fields and Smith of Hume's murder. While he testified that he did not intend to hinder police investigation, a self-initiated, detailed lie to the police by falsely implicating people in a murder clearly demonstrates the intent to hinder or delay the Hume murder investigation. See *People v. Meister*, 289 Ill. App. 3d 337, 682 N.E.2d 306, 224 Ill. Dec. 745 (1997) (voluntarily furnishing false information to police is designed to mislead police officers and delay performance of their duties).

But, we have concluded that § 28-204 requires that Anderson have generally and reliably known "of the other's conduct," which necessarily includes knowing "the other's" identity. See *State v. Severin*, 250 Neb. 841, 553 N.W.2d 452 (1996). The evidence was that Anderson learned through local news media about Hume's murder, including the location of the shooting, the physical appearance of Hume, the injury Hume sustained, the type of weapon the murderer used, and the time of day the murder occurred. However, there is absolutely no evidence that Anderson had any knowledge of who really murdered Hume when he falsely accused Fields and Smith or any evidence of any connection between Anderson and Ildefonso, Hume's killer. Consequently, the State introduced insufficient evidence, as a matter of law, to sustain Anderson's conviction for accessory to first degree murder. Accordingly, we reverse the conviction.

REVERSED.