**NATHAN McINTOSH, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2008-0060

Supreme Court of the Virgin Islands

November 29, 2012

KELE C. ONYEJEKWE, ESQ., Office of the Territorial Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

PAMELA R. TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(November 29, 2012)

HODGE, *Chief Justice*

Nathan McIntosh appeals from a Judgment and Commitment[1] of the Superior Court of the Virgin Islands adjudging him guilty of two counts, including one count each of possession of a controlled substance with intent to distribute and introduction of narcotics into a prison.[2] Because

---

[1] The court signed the Judgment and Commitment on May 29, 2008, and it was entered and issued to the parties on May 30, 2008. *See* V.I.S.CT.R. 5(b)(6) ("A judgment or order is entered within the meaning of this subdivision when it is entered on the criminal docket.").

[2] Violations, respectively, of V.I. CODE ANN. tit. 19, § 604(a)(1), and tit. 14, § 666. McIntosh was sentenced to a period of three years of incarceration for each conviction, with the sentences to run concurrently. (J.A. Vol. I at 18.) He further received a "special parole term" of five years pursuant to section 604(a)(1) and 604(c), and was also directed to pay a fine of $5,000.00 and court costs of $75.00. In a *nunc pro tunc* order issued on April 14, 2011, the

McIntosh was impermissibly convicted of two offenses based on the same act, we will remand the case for the trial court to determine which of the two convictions it will stay.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

On April 15, 2006, Nathan McIntosh was discovered to have several small packages of marijuana in his possession at the Golden Grove Correctional Facility in St. Croix, Virgin Islands, where he worked as a corrections officer. He was arrested and charged in a Third Amended Information with possession of a controlled substance with intent to distribute and introduction of a narcotic into prison.

McIntosh's three-day jury trial on the charges began on February 6, 2008. During the trial, McIntosh's colleague, Corrections Officer Stacie Williams-Richards, testified that on April 15, 2006, she was responsible for performing intake at the prison, which required her to search officers and civilians entering Golden Grove for drugs and other contraband. (J.A. Vol. I at 71.) McIntosh came to work at Golden Grove that morning between 9:45 a.m. and 10:00 a.m., and proceeded to the checkpoint holding a bag containing two cold drinks and a Ritz Crackers box. (J.A. Vol. I at 75.) Officer Williams-Richards opened the Ritz Crackers box and found "[t]hree round objects taped with something black around it," but did not see any crackers. (J.A. Vol. I at 76.) As she opened the box, McIntosh stated "oh, this don't belong in here," and he took the bag and left the premises, walking towards the parking lot. (J.A. Vol. I at 76.) Officer Williams-Richards immediately reported her observations concerning McIntosh to her superiors, Sergeants Diane Prosper and Clayton Phipps. (J.A. Vol. I at 76, 159.) McIntosh returned to the prison about five minutes later but was carrying only the drinks, and not the Ritz Crackers box. (J.A. Vol. I at 77.)

Later that day, at about 2:45 p.m., McIntosh left the prison facility, telling Officer Williams-Richards that he was going to the airport to pick up his girlfriend. He returned about fifteen minutes later, and Officer Williams-Richards noticed that he was "walking kind of funny." (J.A. Vol.

court granted McIntosh's motion to correct the Judgment so that he would receive credit for time served during pretrial detention.

I at 78-79.)[3] She asked him if something had happened to his foot, to which McIntosh responded "yes . . . I am wearing a brace." (J.A. Vol. I at 78-79.) He pulled up each of his pants legs knee-high and showed her the front parts of his legs, each of which bore a brace. (J.A. Vol. I at 78-79.) Officer Williams-Richards permitted McIntosh to proceed past the checkpoint, but as he walked away, she noticed a bulge behind his left knee. (J.A. Vol. I at 82.) She immediately called Sergeant Prosper to report what she had observed. As Sergeant Prosper was receiving this phone call, she saw McIntosh arrive in the recreation yard. (J.A. Vol. I at 160.) Sergeant Prosper testified that she then approached McIntosh and asked him if he had anything he needed to talk to her about, to which he responded, "no, Ms. Prosper. I safe." (J.A. Vol. I at 161.) She then asked McIntosh why he was walking funny, and he responded that he was wearing a leg brace. (J.A. Vol. I at 161.) When Sergeant Prosper asked to see the brace, McIntosh refused. (J.A. Vol. I at 161.) Sergeant Prosper told McIntosh that whatever he had, he needed to turn it over to her. (J.A. Vol. I at 162.) McIntosh then said he was going to go home sick, and Sergeant Prosper responded that he could not do that. (J.A. Vol. I at 162.) Finally, McIntosh produced two items wrapped in black tape, which he said he found in the parking lot by his car. (J.A. Vol. I at 162.) During the trial, the People admitted into evidence a photograph of two items purportedly seized from McIntosh. Officer Williams-Richards testified that the two items identified in the photograph were two of the three objects she had seen McIntosh bring into the premises in a Ritz Crackers box around 10:00 a.m. on April 15, 2006, and Sergeant Prosper identified them as items seized from McIntosh later that afternoon. (J.A. Vol. I at 77, 83, 162, 164.) The police sent the items to a chemist for analysis, who testified that the items contained 213 grams of marijuana. (J.A. Vol. II at 104.)

At the close of the People's case, McIntosh made a Motion for Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. (J.A. Vol. II at 154.) He argued that there was insufficient evidence to prove that he had any intent to distribute the marijuana. (J.A. Vol. II at 154.) McIntosh also argued that because he was a "peace officer," it was the People's burden to prove that he did not bring the marijuana into the

---

[3] Another officer, Officer Patrick Piper, corroborated Officer Williams-Richards' testimony, and stated that he too saw McIntosh "walking funny." (J.A. Vol. II at 22.)

prison for the purposes of securing it and turning it over to the authorities. (J.A. Vol. II at 156.) McIntosh did not cite any authority for this proposition. The People responded that the amount of drugs, along with the suspicious manner in which McIntosh attempted to bring the packages into the prison — including the way they were concealed — and the fact that he passed security offices, including the Warden's Office, where he could have turned the packages over before he was caught, provided sufficient circumstantial evidence as to McIntosh's intent to distribute the marijuana. (J.A. Vol. II at 158-59.) The court found that the People had advanced sufficient evidence on both counts and denied McIntosh's Motion. (J.A. Vol. II at 166.)

McIntosh took the stand in his own defense and testified that when he arrived at the prison in the morning of April 15, 2006, he brought his DVD player into the prison in a Ritz Crackers box because a previous DVD player had been stolen out of his car and he did not want to leave it there. (J.A. Vol. III at 52.) Once another officer — referred to as "Jahmeel" — reminded him that he could not bring electrical items into the prison, McIntosh took the box back to his car. (J.A. Vol. III at 53.)[4] He testified that later that afternoon, when his girlfriend dropped him off in the parking lot, he found the two black items on the ground and put them in his back pocket. (J.A. Vol. III at 56.) He stated that he did not turn them over to Officer Williams-Richards, or any other officer, because he "didn't trust dealing with any officer other than the supervisor." (J.A. Vol. III at 63.) According to McIntosh, he then looked for and found Sergeant Prosper, and told her to look under a newspaper on a bench to find the items. (J.A. Vol. III at 60.) On cross-examination, the People asked McIntosh why he had placed the items in his back pocket, or placed them under a newspaper, or otherwise did not turn them over if he did not know what they were, and did not know whether they were even items of an illegal nature. (J.A. Vol. III at 65.) McIntosh testified that he was not trying to hide the items, but reiterated that he only trusted his supervisor. (J.A. Vol. III at 65.)

At the close of the case, McIntosh renewed his motion for a Rule 29 Judgment of Acquittal. (J.A. Vol. III at 77.) Again, he argued that there was insufficient evidence that he had any intent to distribute the

---

[4] It is not clear how this other officer purportedly knew that McIntosh's Ritz Crackers box contained an electrical item.

marijuana, and that there was no evidence he brought the marijuana into the prison for any purpose other than to turn it in to his supervisors. (J.A. Vol. III at 77.) The court noted that the matter largely turned on questions of credibility and denied the motion. (J.A. Vol. III at 84.)

The jury found McIntosh guilty on all counts, and this appeal ensued.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). Because the Superior Court's May 30, 2008 Judgment and Commitment constitutes a final judgment, this Court possesses jurisdiction over McIntosh's appeal. *See, e.g., Browne v. People*, 56 V.I. 207, 216 (V.I. 2012) (in a criminal case, written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of 4 V.I.C. § 32(a)); *Melendez v. People*, 56 V.I. 244, 251 (V.I. 2012) (same).

We review the Superior Court's factual findings for clear error and exercise plenary review over the Superior Court's application of the law to those facts. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007); *see also People v. John*, 52 V.I. 247, 255 (V.I. 2009) (quoting *United States v. Shields*, 458 F.3d 269, 276 (3d Cir. 2006)), *aff'd*, 654 F.3d 412, 55 V.I. 1324 (3d Cir. 2011). Where an appellant fails to object to a Superior Court order or decision, we review for plain error. V.I.S.CT.R. 4(h); *Phipps v. People*, 54 V.I. 543, 546 (V.I. 2011).

When reviewing a challenge to the sufficiency of the evidence leading to a conviction, the standard of review "is whether there is substantial evidence, when viewed in the light most favorable to the government, to support the jury's verdict." *Marcelle v. People*, 55 V.I. 536, 541 (V.I. 2011); *accord Ritter v. People*, 51 V.I. 354, 358, 361 (V.I. 2009); *see also Gov't of the V.I. v. Williams*, 739 F.2d 936, 940 (3d Cir. 1984).

### B. Possession with Intent to Distribute Conviction

#### 1. *Sufficiency of the Evidence*

McIntosh challenges the sufficiency of the evidence presented at trial to support his conviction under Count I for possession of a controlled

substance[5] with the intent to distribute.[6] 19 V.I.C. § 604(a)(1). To resolve this challenge, we must determine whether the People presented substantial evidence that McIntosh knowingly and intentionally possessed a controlled substance and that he did so with the intent to distribute the same. *See United States v. Lacy*, 446 F.3d 448, 454 (3d Cir. 2006) (noting that the elements of the federal offense of possession with intent to distribute, which the Virgin Islands statute mirrors,[7] are "(1) knowing or intentional (2) possession (3) with intent to distribute (4) a controlled substance"); *see also Rohn v. Virgin Islands*, 47 V.I. 682, 691 (D.V.I. App. Div. 2006).

---

[5] The question of whether marijuana is a controlled substance is a matter of law, rather than fact. In 1971, the Virgin Islands Legislature adopted the Controlled Substances Law. Act. No. 2961, § 1, Sess. L. 1971. When it did so, it outlined several schedules of controlled substances ("Schedules" or "Schedules of Controlled Substances"), listing substances the possession and distribution of which were made illegal, except in certain circumstances. 19 V.I.C. § 595. It also gave the Commissioner of Health the statutory authority to add or remove substances from the Schedules, make requisite findings, and otherwise apply the Controlled Substances Law. 19 V.I.C. § 594. When the Commissioner decides to add or remove a substance from the schedule, he is required to "issue an order which shall be published once a week for three consecutive weeks in all Virgin Islands newspapers of general circulation." 19 V.I.C. § 594(c). Regardless of whether any substances were added or removed in the preceding year, the Schedules must be "updated and published" on an annual basis. 19 V.I.C. § 595(a). The statute does not state where the Schedules are supposed to be updated and published, or whether an updated version of the Schedule is required to be published in the Code. The Court has no evidence, however, that any such updating, amending, or republication of the Schedules has occurred since 1971. Consequently, we rely on section 595, which states that the Schedules as they are arranged in the Code — that is, as they existed when they were first adopted in 1971 — "shall, unless and until amended pursuant to section 594" consist of the substances listed therein. Marijuana is listed in the Code as a non-narcotic Controlled Substance under Schedule I. 19 V.I.C. § 595(c), Sch. I(c). Therefore, it remains a controlled substance for the purposes of that chapter as a matter of law.

[6] McIntosh made a Rule 29 Motion during the trial and upon conclusion of the case. (J.A. Vol. II at 154, Vol. III at 77.) Each of these motions was denied. (J.A. Vol. II at 166, Vol. III at 84.) Consequently, he preserved his sufficiency claim. *See United States v. Wright-Barker*, 784 F.2d 161, 170 (3d Cir. 1986) (stating that a defendant preserves his sufficiency objection by making a Rule 29 motion either at the close of all of the evidence or after judgment within the time limits provided in the Rule).

[7] Section 841(a) of Title 21 of the United States Code states in relevant part: "Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally — (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ." Similarly, the comparable Virgin Islands statute states: "Except as authorized by this chapter, it shall be unlawful for any person knowingly or intentionally — (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . . " 19 V.I.C. § 604(a).

■ Viewing issues of credibility in favor of the People, we conclude that the People did present substantial evidence on each of these elements. The People presented testimony from a number of corrections officers that McIntosh knowingly and intentionally possessed marijuana — a controlled substance — on April 15, 2006. For example, Officer Richards-Williams testified that she saw McIntosh enter the prison with a Ritz Crackers box containing three round objects taped with something black around them. (J.A. Vol. I at 76.) She later identified the items in a photograph admitted into evidence as two of the three items she saw in the Ritz Crackers box. (J.A. Vol. I. at 77.) Sergeant Prosper seized those items from McIntosh later that afternoon (J.A. Vol. I at 162, 164) and they contained a product which tested positive for marijuana (J.A. Vol. II at 104). In fact, McIntosh admitted in his testimony that he possessed the marijuana. (J.A. Vol. III at 56.)

■ Furthermore, there is sufficient evidence from which a jury could have rationally concluded that McIntosh intended to distribute the marijuana. This element may be established by circumstantial evidence. *United States v. Johnson*, 302 F.3d 139, 149 (3d Cir. 2002). First, and perhaps most significantly, McIntosh brought marijuana, which constitutes illegal contraband, into a prison. It is unlikely that a person seeking to consume a prohibited controlled substance for his own enjoyment would voluntarily try to enter a prison in order to do so. *See United States v. Alfaro*, 935 F.2d 64, 68 (5th Cir. 1991) ("Had [the defendant] been found in his house or on the street with the drugs, the meager [quantity of five marijuana cigarettes] might effectively preclude any distribution conviction. Here, however, he was caught while entering a prison, a fact that affords supplementary inculpatory inferences. A corrections officer, constantly watchful and incessantly under watch, could hardly expect to . . . smoke marijuana on the job; hence, the alternative to personal use-distribution-becomes ever more supportable."); *Bradley v. State*, 292 Ga. App. 737, 665 S.E.2d 428, 430 (2008) (noting that a jury can infer an intent to distribute from, among other evidence, the fact that a corrections officer brought cocaine and marijuana into a "heavily guarded prison facility," which tended to prove she did not intend to use it herself). *Cf. State v. House*, 325 So.2d 222, 225-26 (La. 1975) (stating that where an *inmate* possesses marijuana in a prison, there is not necessarily sufficient evidence that he intended to distribute, rather than use it; but not expressly discussing whether the

same principle would apply to a guard, who is free to come and go, and who presumably may choose from a range of more discreet locations in which to consume the drug).

In addition, McIntosh had a substantial quantity of marijuana in his possession — 213 grams or nearly half a pound — a fact from which the jury could infer that he intended to distribute it, based on the theory that such an amount exceeds what would typically be possessed for personal use.[8] *See United States v. Thomas*, 294 Fed. Appx. 124, 134 (5th Cir. 2008) (explaining that "[a] jury may infer intent to distribute based solely on possession of an amount [of illegal drugs] too large to be used by the person in possession"); *United States v. Glenn*, 667 F.2d 1269, 1272 (9th Cir. 1982) (finding sufficient evidence of an intent to distribute where defendant possessed approximately 185 grams of marijuana, which is "considerably more than a person would ordinarily possess for personal use"); *State v. Williams*, No. 08-02-0127, 2011 N.J. Super. Unpub. LEXIS 2175, at *11 (N.J. Super. Ct. Aug. 10, 2011) (citing expert testimony and noting that jurors could infer an intent to distribute from the large quantity of marijuana possessed, which, at half of a pound, could produce 686 marijuana cigarettes).[9] Furthermore, there is no evidence McIntosh entered the prison with rolling papers, or pipes, or any other paraphernalia commonly used to consume marijuana, which he likely would have required if he brought it to the prison to consume himself. *See Boone v. Commonwealth*, Record No. 1537-07-01, 2008 Va. App. LEXIS 434, at *8 (Va. Ct. App. Sept. 23, 2008) (unpublished) (considering among other factors in a sufficiency challenge the fact that the defendant did not have "any rolling papers or smoking pipes typically found on a marijuana user").

---

[8] While 213 grams does not necessarily constitute the "sufficiently large quantity of drugs" that might, by itself, give rise to an inference of intent to distribute, *United States v. Rodriguez*, 961 F.2d 1089, 1092 (3d Cir. 1992), nonetheless such a quantity constitutes some evidence of such an intent.

[9] The People below failed to present evidence from an expert in drug distribution to further explain the significance of the quantity of drugs or the way in which they were packaged and transported. It is not clear why they failed to take a step which provides a useful, and sometimes necessary, basis from which a jury can make intent-to-distribute inferences. Our task, however, is not to inventory all the ways in which the People could have made a stronger case, but only to consider whether they made a sufficient case given the evidence actually presented at trial, *Marcelle*, 55 V.I. at 541, which we conclude they have done.

██ McIntosh attempts to bolster his sufficiency argument by referencing his own testimony that his intent was to turn the package containing marijuana over to the relevant security personnel at the prison. (Appellant's Br. 8; J.A. Vol. III at 60.) However, the jury was free to assess McIntosh's credibility, and to reject his testimony.[10] *See Francis v. People*, 56 V.I. 370, 384 (V.I. 2012) (noting that it is within the jury's prerogative to reject or accept the testimony of a witness). The jury might instead have credited the testimony of McIntosh's colleagues, who observed him attempting to bring the marijuana into the prison on two separate occasions that day while taking pains to hide it. From this evidence, a jury could rationally have concluded that McIntosh possessed the marijuana with the intent to distribute it.

### 2. *Jury Instructions*[11]

#### *i.* Omission of an Instruction on the Lesser Included Offense of Simple Possession

██ McIntosh claims that the trial court erred by not instructing the jury on the lesser included offense of simple possession. For a jury to

---

[10] Indeed, the jury could have rejected his testimony as a consequence of the surreptitious manner in which McIntosh brought the package into the prison. Although McIntosh maintained that he did not know what the package contained and consequently had no reason to suspect it was an illegal substance, by his own admission once he brought the package into the prison, he did not immediately turn it over to a supervisor but hid it under a newspaper instead.

[11] McIntosh argues that the court erred by not instructing the jury that, for the purposes of a section 604(a) violation, a defendant must not only have had the intent to distribute the controlled substance, but must have intended to distribute it *to a person*. Because McIntosh did not object below, (Appellant's Br. 5), we review the claimed deficiency for "plain error." *Francis v. People*, 52 V.I. 381, 390 (V.I. 2009) (applying the plain error standard in the context of a potentially erroneous jury instruction). However, even if the court erred — an issue we do not reach — any such error could not have been "plain," as no court has held that "to a person" is an implicit element of the offense. *See, e.g., Billu v. People*, 57 V.I. 455, 463 n.5 (V.I. 2012) (error cannot be "plain" where "there is no binding authority resolving" a legal question). Furthermore, any alleged error would have been harmless, as there is overwhelming evidence that McIntosh intended to deliver the marijuana to another person. Here, McIntosh expressly admitted that he intended to deliver the marijuana to another person — his supervisor. (J.A. Vol. III at 60.) Furthermore, the People presented evidence that could rationally lead the jury to conclude that McIntosh intended to distribute the marijuana to inmates of the prison: he hid the packages during each of the two attempts to enter the facility; he possessed a substantial amount of the controlled substance; and he was entering his place of work, which is a governmental facility for the incarceration of criminals, and the jury could

convict a defendant of the lesser included offense, "there must be 'a reasonable ground of doubt' for the jury to find that the defendant committed the lesser offense but not the higher offense." *Phipps v. People*, 54 V.I. 543, 550-51 (2011) (quoting 5 V.I.C. § 3635); *see also Gov't of the V.I. v. Knight*, 989 F.2d 619, 632, 28 V.I. 249 (3d Cir. 1993) ("A jury instruction must contain a lesser included offense only if the evidence adduced at trial could support a guilty verdict on either charge.").

 It is not clear whether McIntosh requested a lesser included offense instruction from the trial court. McIntosh failed to comply with the Court's Rule 22(a)(3), which requires an appellant to include in his brief "a designation by reference to specific pages of the appendix . . . at which each issue on appeal was raised, objected to, and ruled upon . . . ." He also failed to include in the Joint Appendix the transcript of the trial court's instruction conference. However, in their brief, the People aver that McIntosh failed to request the lesser included charge. (Appellee's Br. 11.) McIntosh also appears to allude to this failure. (Appellant's Br. 5 (stating, in relation to another issue that "[b]ecause there was no objection at the trial level, jury instructions are reviewed pursuant to Rule 4(h)[12] of this Court" and later stating in relation to this particular issue that "Rule 4(h) review appl[ies].").)

 Because McIntosh did not request an instruction on the lesser included offense of simple possession, and did not object when the

---

have easily concluded that individuals who possess marijuana for their own personal use are unlikely to bring it to prison to consume. There is no evidence that could rationally lead a jury to find that McIntosh intended to distribute the substance to any place or thing other than to another person, whether that distribution occurred directly or indirectly. Consequently, even if the trial court erred by omitting a "to another person" instruction, a conclusion we do not reach, any such error would be harmless. *Francis*, 52 V.I. at 390.

[12] Rule 4(h) states that "Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal; provided, however, that when the interests of justice so require, the Supreme Court may consider and determine any question not so presented." McIntosh's citation to the Rule does not quite clarify whether he requested the instruction, but his apparent linking of the Rule to the failure to object as to other claims raised on appeal indicates that he did not raise the matter below.

This Court applies Rule 4(h)'s "interests of justice" criterion under the same standard we use for "plain error" analysis. Although Rule 52 of the Federal Rules of Criminal Procedure — which states that a "plain error that effects substantial rights may be considered even though it was not brought to the court's attention" — does not apply to this Court, we have adopted by analogy the "plain error" standard and applied it to those cases which fall within the bounds of Rule 4(h). *See, e.g., Williams v. People*, 56 V.I. 821, 827 (V.I. 2012) (citing Rule 4(h) and applying the "plain error" standard of review).

instructions were given, we review for plain error. Here, we find that the trial court's "failure" to *sua sponte* instruct on the lesser included offense did not constitute plain error. There was no reasonable ground for the jury to find that McIntosh possessed the marijuana but did so without intent to distribute it to another person. McIntosh himself testified that he intended to give the marijuana to his supervisor. *Durham v. United States*, 743 A.2d 196, 201 (D.C. 1999) (noting that any act of distribution to another person qualifies as unlawful distribution, and that no sale is required). (J.A. Vol. III at 60.) Based on his own admission, and the testimony of his colleagues establishing that he attempted to bring the marijuana into the institution on two occasions in a furtive manner, and based on the fact that he was bringing marijuana to a guarded prison where he was unlikely to employ it for his own personal use, the jury did not have a reasonable ground on which to convict him of simple possession, but acquit him on possession with intent to distribute.[13]

### C. Conviction for Introducing a Narcotic Into a Prison System

#### 1. *Whether 19 V.I.C. § 591 Impliedly Repealed 14 V.I.C. § 666*

McIntosh argues that his conviction pursuant to section 666 of title 14 for introducing a narcotic into a prison facility is void because section 591 of title 19 impliedly repealed this offense. Section 666 states that "[a]ny person who knowingly introduces any narcotic drug into a prison or detention facility shall be imprisoned not more than 10 years." 14 V.I.C. § 666. The statute goes on to state that, "[f]or the purpose of this section," "narcotic drug" includes "cannabis."[14] That statute was created by Act No. 2626 on February 13, 1970, which enacted three provisions, all of which relate to prison contraband and none of which have been amended since enactment in 1970.

On March 23, 1971, Act No. 2961, enacting the Controlled Substances Law, took effect. The first section of that Act made clear that "[c]hapter

---

[13] Because he did not raise it in the trial court or on appeal, and the facts do not justify it, we need not reach the question of whether an instruction on the affirmative defense provided in section 627(d) of title 19 would have been appropriate. 19 V.I.C. § 627(d) ("No civil or criminal liability shall be imposed by virtue of this chapter upon any duly authorized Government officer or employee lawfully engaged in the enforcement of this [controlled substances] chapter.").

[14] Marijuana is defined as "all parts of any species of the plant cannabis." 19 V.I.C. § 593(18).

29 of title 19 of the Virgin Islands Code is hereby repealed." In its place, the Legislature adopted the Controlled Substances Law. Section 593, which is part of the Controlled Substances chapter of title 19, provides definitions of terms for "use[] in this chapter." 19 V.I.C. § 593. It defines "narcotic drug" in relevant part as "[o]pium, coca leaves, and opiates" and "[a] compound, manufacture, salt, or preparation of opium, coca leaves, or opiates," or any substance "chemically identical" with those substances. 19 V.I.C. § 593(19). The definition does not include any reference to marijuana or cannabis. Consequently, McIntosh argues that the later enactment of the Controlled Substances Law, including its definitional provisions relating to "narcotic drug," had the effect of impliedly repealing the definition of narcotic found in section 666.

This Court is "mindful that repeal by implication is generally disfavored and should occur only when 'the later statute expressly contradicts the original act' or when 'such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all.' " *V.I. Public Servs. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 486 (V.I. 2008) (quoting *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662, 127 S. Ct. 2518, 168 L. Ed. 2d 467 (2007)); *accord In re Guardianship of Penn*, 15 F.3d 292, 295, 29 V.I. 396 (3d Cir. 1994); *Creque v. Luis*, 803 F.2d 92, 94 (3d Cir. 1986) (stating that when a general and specific act are *in pari materia*, i.e., they address the same subject matter, they "should be harmonized if possible").

First, the Controlled Substances Law did not expressly repeal section 666. The Law repealed only chapter 29 of title 19, and section 666 not only is not part of the Controlled Substances chapter, but resides within an entirely different title — title 14. In addition, the two statutes do not expressly contradict one another. Section 666 of title 14 makes it clear that its definition of "narcotic", which includes cannabis, applies for the purposes of that section only. 14 V.I.C. § 666 ("*For the purpose of this section*, narcotic drug means . . . cannabis") (emphasis added). On the other hand, section 593 of title 19 defines "narcotic" for the purposes of the Controlled Substances Law only. 19 V.I.C. § 593(19) (defining the term "narcotic drug" "[*a*]*s used in [the Controlled Substances] chapter*") (emphasis added). Consequently, the two provisions are not in conflict. *See also* 1A NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 23:11 (7th ed. 2007) (noting

that the express repeal of specific provisions is evidence that a legislature does not intend further repeals (by implication)).

Furthermore, the later statute — the Controlled Substances Law — retains its meaning, even though it has a separate definition for narcotic. The Legislature, by retaining section 666 of title 14, intended to punish more harshly those defendants that bring a *broad* range of substances into detention facilities, and designed the statute such that this would include, among other things, cannabis. Similarly, the Legislature appears to have decided that with respect to possession of narcotics with intent to distribute under section 591 of title 19 — for which it imposed harsher penalties than either (1) mere possession of a narcotic or (2) possession with intent to distribute non-narcotic controlled substances — only a narrower subclass of controlled substances should justify the steeper penalties. *See State v. Anderson*, 10 Neb. Ct. App. 163, 626 N.W.2d 627, 636 (2001) (reasoning that where two statutes relate to similar conduct, but have varying penalties, and differ regarding an element, the court can presume that the provision with the greater punishment relates to conduct that is more serious than the provision with the lesser punishment). For these reasons, and mindful that we must harmonize the statutes whenever possible, we conclude that the enactment of the Controlled Substances Law did not expressly or impliedly repeal section 666 of title 14.

### 2. Whether Section 666 is Unconstitutionally Vague[15]

McIntosh argues for the first time on appeal that section 666 is unconstitutionally vague because it could potentially punish innocent conduct. (Appellant's Br. 20.) He argues, "[a] physician or pharmacist, caring for a sick inmate, otherwise authorized to handle narcotics, would be convicted under section 666." (Appellant's Br. 26.)

"To satisfy due process, a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can

---

[15] McIntosh's related argument — that section 666 does not meet the "rational basis" test — is so unfounded as to merit only a brief mention. It was McIntosh's burden to "'negative every conceivable basis that might support'" the government's statutory classification. *United States v. Pollard*, 326 F.3d 397, 407-08, 45 V.I. 672 (3d Cir. 2003). His failure to even attempt to do so is fatal to his claim. Furthermore, it is beyond argument that the government has an interest in preventing the introduction of narcotics into prisons, and imposing penalties significant enough to serve a deterrent effect is a rational means of accomplishing this goal. The argument therefore fails.

understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 561 U.S. ___, 130 S. Ct. 2896, 2927-28, 177 L. Ed. 2d 619 (2010). "The United States Supreme Court has held that a statute is unconstitutionally vague if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.' " *LeBlanc v. People*, 56 V.I. 536, 541 (V.I. 2012) (quoting *United States v. Williams*, 553 U.S. 285, 304, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008)). Before we determine whether section 666 is unconstitutionally vague, however, we must satisfy ourselves that McIntosh has standing to challenge the statute. *LeBlanc*, 56 V.I. at 541 (citing *Gov't of the V.I. v. John*, 159 F. Supp. 2d 201, 204-05 (D.V.I. App. Div. 1999)).[16] Namely, we must analyze the specific allegations against McIntosh and determine whether this statute is vague as applied to the facts of the particular charge against him. *LeBlanc*, 56 V.I. at 541 (citing *United States v. Mazurie*, 419 U.S. 544, 550, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.")). "If [McIntosh]'s conduct fell within the bounds of what was clearly proscribed by the statute, [he] did not have standing to challenge the vagueness of the statute, whether or not it may turn out to be vague as applied in other situations." *John*, 159 F. Supp. 2d at 205; *see Hightree v. People*, 55 V.I. 947, 953 n.1 (V.I. 2011) (holding that to assert standing to challenge a statute as unconstitutional, a litigant must show that he suffered an actual or threatened injury).

■ However, McIntosh does not argue-nor can he, on the evidence presented at trial — that he belongs to any class of persons who would be authorized to introduce narcotics into a prison. There is no provision of the Code which authorizes correctional officers to introduce narcotics into

---

[16] Of course, in the Virgin Islands the concept of "standing" is a judicially created prudential doctrine, and not a jurisdictional one. *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 564 (V.I. 2012). It can be waived. *Id.* However, in this case the People sufficiently — if inartfully — raised the issue in their brief. (Appellee's Br. 24-25 (arguing that McIntosh must show that the statute is "vague as to him").)

detention facilities.[17] Because McIntosh's conduct is clearly proscribed by section 666 of title 14, he does not have standing to challenge the vagueness of the statute. Since McIntosh does not have standing, we need not consider whether his conviction under section 666 constitutes "plain error."

### 3. Whether Section 666 Violates the Eighth Amendment

■ McIntosh argues that the constitutional prohibition on cruel and unusual punishment found in the Eighth Amendment[18] is offended by the punishment he received in this case. The Eighth Amendment's ban on cruel and unusual punishments embodies " 'the precept of justice that punishment for crime should be graduated and proportioned to [the] offense,' " *Graham v. Florida*, 130 S.Ct. 2011, 2021, 176 L. Ed. 2d 825 (2010) (quoting *Weems v. United States*, 217 U.S. 349, 367, 30 S. Ct. 544, 54 L. Ed. 793, (1910)). Because the "basic mores of society change," *Kennedy v. Louisiana*, 554 U.S. 407, 419, 128 S. Ct. 2641, 171 L. Ed. 2d 525 (2008), "Eighth Amendment challenges are considered by applying an 'evolving standard[] of decency that mark[s] the progress of a maturing society.' " *Beaupierre v. People*, 55 V.I. 623, 636-37 (V.I. 2011) (citing *Graham*, 130 S. Ct. at 2021). The central principle of most Eighth Amendment challenges is " '[t]he concept of proportionality.' " *Miller v. Alabama*, 132 S. Ct. 2455, 2463, 183 L. Ed. 2d 407 (2012) (quoting *Graham*, 130 S.Ct. at 2021).

■ The Supreme Court of the United States has "explained its approach for determining whether a sentence for a term of years is grossly

---

[17] Assuming McIntosh is also raising an argument under the common law that law enforcement officers who bring narcotics into a prison with an innocent intent should be immune from criminal liability, such an argument fails under the plain error analysis we apply here. Even if such an argument could be sustained, any error by the trial court would not have been plain, as there is no binding authority supporting such a proposition. *See United States v. Starr*, 361 Fed. Appx. 60, 61 (11th Cir. 2010) (considering an "innocent intent" defense to a weapons possession conviction, and determining that since no binding authority had recognized such a defense to that statute, any error could not have been plain).

[18] Section 3 of the Revised Organic Act of 1954 incorporates by reference the Eighth Amendment. *Francis v. People*, 57 V.I. 201, 215 n.9 (V.I. 2012) (Revised Organic Act makes applicable "the first through ninth amendments inclusive"). The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1994), *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995 & Supp. 1997) (preceding V.I. CODE ANN. tit. 1).

disproportionate for a particular defendant's crime." *Graham*, 130 S.Ct. at 2021. "A court must begin by comparing the gravity of the offense and the severity of the sentence." *Id.* (citing *Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (Kennedy, J., concurring)). " '[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* "If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." *Id.* at 2022.

 Here, we find that the trial court's sentence of three years' incarceration for McIntosh's conviction under section 666[19] does not constitute "plain error."[20] Indeed, there was no error at all. "Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011). McIntosh appears to argue that because simple possession and possession with intent to distribute under the Controlled Substances Law do not lead to three-year prison terms, his own sentence of three years under section 666 is cruel and unusual. This argument fails on several grounds. First, McIntosh's conviction for the section 666 violation was not for simple possession or possession with intent to distribute: he was convicted of introducing narcotics into a prison. Second, persons convicted of possession of marijuana with intent to distribute may receive a maximum sentence of

---

[19] Section 666 authorizes a potential ten-year maximum period of incarceration, but, as McIntosh was sentenced to only three years, he lacks standing to challenge the maximum sentence. *Cf. United States v. Greer*, 607 F.3d 559, 565 (8th Cir. 2010) (reasoning that a defendant lacked standing to challenge the mandatory minimum sentence because he did not receive the mandatory minimum—he received a greater sentence); *see Commonwealth v. Rivera*, 78 Mass. App. Ct. 1121, 939 N.E.2d 804 (unpublished table disposition), 2011 Mass. App. Unpub. LEXIS 81, at *3-4 & n.2 (Mass. App. Ct. 2011) (noting that a defendant cannot challenge on Eighth Amendment grounds a sentence he does not receive). While standing is not a jurisdictional prerequisite, it is a judicially created prudential doctrine generally applied by this Court to ensure that the litigant has actually suffered a legally cognizable injury. *Benjamin*, 56 V.I. at 564. Consequently, McIntosh's references in his Brief to a theoretical ten-year jail term are inapposite.

[20] Because he failed to raise the argument below, the Court reviews for plain error. *Codrington v. People*, 57 V.I. 176, 184 (V.I. 2012) (applying a "plain error" standard of review to an Eighth Amendment argument raised for the first time on appeal).

five years, which is greater than the three years McIntosh received. Finally, the three-year sentence is not relatively severe when one considers the gravity of the offense: by introducing narcotics and other habit-forming substances into prisons, defendants risk exacerbating the physical and mental dependency on drugs that often leads individuals to commit crimes in the first place. Furthermore, the existence of valuable goods for trade within the prison system contributes to a black market often accompanied by debts, threats, coercion, and violence. *See Ferguson v. United States*, 623 F.3d 627, 630 (8th Cir. 2010) (finding no Eighth Amendment violation on a sentence for possession of drugs in prison, in part because of "the serious problem of drugs in prison"). The presence of narcotics within prisons diminishes the ability of the government to deter crimes, protect the health and welfare of inmates, and to rehabilitate detainees. A three-year sentence for such a crime is therefore not disproportionate to the gravity of the offense. *See State v. Bell*, 719 S.W.2d 763, 767 (Mo. 1986) (noting that a five-year sentence for possessing less than 35 grams of a controlled substance in a correctional institution was not cruel and unusual punishment, even though the possession of the same amount outside the prison would require only a maximum one-year sentence, where the greater punishment is "reasonable given the dangers resulting from the use of controlled substances . . . within correctional institutions"). Consequently, McIntosh has not carried his burden of showing that the trial court committed error. *Miknevich*, 638 F.3d at 186 (emphasizing that on appeal, the defendant bears the burden under this analysis where he fails to raise the Eighth Amendment argument at trial). And even if there was an error, it would not have been plain, as there is no authority binding on the Superior Court which holds that a three-year term of imprisonment resulting from a conviction for introduction of a narcotic into a prison is cruel and unusual. This argument therefore fails.

### D. Section 104 of Title 14

As his final argument, McIntosh contends that he was convicted for two offenses based on one singular act, in violation of section 104 of title 14 of the Virgin Islands Code. Section 104 states:

> An act or omission which is made punishable in different ways by different provisions of this Code may be punished under any of such

provisions, but in no case may it be punished under more than one. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

The People conceded at oral argument that they charged McIntosh with having committed just one act, and they further conceded that he was convicted of having committed just one act.[21]

■ We recently announced that the proper procedure for a trial court, when faced with two convictions predicated on a singular act, is to *stay* one of those convictions; in the event the non-stayed (or "active") conviction is reversed on appeal, the case would be remanded for resentencing under the previously stayed conviction. *Williams v. People*, 56 V.I. 821, 832-34 (V.I. 2012). If the active conviction is not reversed, once the sentence on that conviction is completed, the trial court must dismiss the stayed conviction. *Id.*

Here, McIntosh received a three-year sentence of incarceration for introduction of a narcotic into prison under Count II, with the sentence to run concurrently with the sentence for Count I. For Count I, possession of a controlled substance with intent to distribute, he received another three-year term of incarceration. McIntosh was also ordered to pay a $5,000 fine, court costs of $75, and was given a five-year special parole term. (J.A. Vol. I at 18.) The Judgment and Commitment did not specify for which conviction he was fined and given parole. However, it is clear from the statutes that only the possession with intent to distribute conviction could give rise to such a punishment. *Compare* 14 V.I.C. § 666 (not providing for any fine or special parole term for those convicted of introduction of a narcotic into a prison) *with* 19 V.I.C. § 604(a)(1) (declaring it unlawful for any person knowingly or intentionally to, *inter alia*, possess a controlled substance with intent to distribute it), 604(b)(1)(B) (permitting sentence of not more than 5 years, a fine of not more than $15,000, or both, for a violation of the prohibition set out in section 604(a)(1) with respect to a "controlled substance in schedule I or II which is not a narcotic drug or in the case of any controlled substance in schedule III," *and* stating that a special parole term of at least two years

---

[21] Because the People conceded the point, and because it appears both parties conducted the trial with the understanding that there was just one act being charged, we do not decide whether the evidence could have supported a finding that McIntosh committed two distinct acts.

must be imposed for first-time offenders), and 604(c) (stating that "a special parole term provided for in this section . . . shall be in addition to, and not in lieu of, any other parole provided for by law").

While McIntosh has presumably completed his term of incarceration, (J.A. Vol. III at 212 (remanding McIntosh to prison to begin to serve his three-year concurrent sentences on May 28, 2008)), he could not yet have completed his special parole term for Count I, and it is not clear whether he has satisfied his $5,000 fine. Consequently, it does not appear that McIntosh has completed his sentence for possession of a controlled substance with intent to distribute. *See Murrell v. People*, 54 V.I. 338, 349 (V.I. 2010) (defining "sentence" to include all forms of punishment imposed at the conclusion of a criminal prosecution). Therefore, we will remand the case to the trial court so it may decide which conviction to stay. If the court stays the conviction for Count II, introduction of a narcotic into prison, then upon McIntosh's completion of his sentence for Count I — assuming it is not reversed on appeal from this Court — the trial court should dismiss the stayed conviction. *Williams*, 56 V.I. at 832-34. On the other hand, if the court decides to stay the Count I conviction for possession with intent to distribute, then — because McIntosh has already completed his sentence for Count II — the trial court must dismiss the Count I conviction immediately. *Id.*

## III. CONCLUSION

There was sufficient evidence to support McIntosh's conviction for possession of a controlled substance with intent to distribute, and so we will affirm it. We will also affirm McIntosh's conviction for introduction of a narcotic into a prison, because section 666 of title 14 of the Virgin Islands Code is not vague, is not unconstitutional, and was not impliedly repealed by the Controlled Substances Law. Furthermore, McIntosh lacks standing to challenge the statute's alleged vagueness. In addition, McIntosh's sentence of three years imprisonment for this charge does not constitute "cruel and unusual punishment."

However, because the People conceded that the two offenses under which McIntosh was convicted were based on one singular act, we will remand the matter for the court to decide which conviction to stay or dismiss.