IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**
April 16, 2025 11:40 AM
SCT-CIV-2019-0056
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **JESSICA GALLIVAN,** ) | **S. Ct. Civ. No. 2019-0056** |
| Appellant/Plaintiff, ) | Re: Super. Ct. Civ. No. 269/2017 (STX) |
| ) | |
| v. ) | |
| ) | |
| **GOVERNMENT EMPLOYEES'** ) | |
| **RETIREMENT SYSTEM,** ) | |
| Appellee/Defendant. ) | |
| ) | |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. James S. Carroll III

Considered: February 11, 2025
Filed: April 16, 2025

Cite as: 2025 VI 11

BEFORE:  **RHYS S. HODGE**, Chief Justice; **IVE ARLINGTON SWAN**, Associate Justice; and **VERNE A. HODGE**, Designated Justice.[1]

APPEARANCES:

**Hon. Jessica Gallivan**
Superior Court of the Virgin Islands
St. Croix, U.S.V.I.
    *Pro se*,

**Pedro K. Williams, Esq.**
Law Offices of Pedro K. Williams
St. Thomas, U.S.V.I.
    *Attorney for Appellee.*

---

[1] Associate Justice Maria M. Cabret, and Associate Justice Harold W.L. Willocks are both recused from this matter, and the Honorable Verne A. Hodge has been appointed to the panel pursuant to title 4, section 24(a) of the Virgin Islands Code. Although Chief Justice Rhys S. Hodge had also originally entered his recusal on September 25, 2020, the Clerk of the Court attempted unsuccessfully for more than four years to identify an eligible current or former judicial officer not disqualified from this matter to serve as the final designated justice of the panel but had not been able to do so. As explained more fully in an order entered on November 25, 2024, Chief Justice Hodge has invoked the rule of necessity to rescind his September 25, 2020 recusal in order to establish the quorum needed to hear this appeal.

# OPINION OF THE COURT

**PER CURIAM.**

¶ 1     The Honorable Jessica Gallivan appeals from the Superior Court's April 26, 2019 opinion and order affirming in part and reversing in part a June 1, 2017 decision of the Government Employees Retirement System Board of Trustees with respect to calculation of her judicial retirement benefits for her service as a magistrate judge,[2] as well as the determination of her refund for excess contributions.  For the reasons that follow, we affirm the Superior Court's classification of Judge Gallivan as a Tier II member of the Judiciary for retirement purposes, but reverse the April 26, 2019 opinion and order with respect to how those Tier II benefits are calculated.

## I. BACKGROUND

¶ 2     Judge Gallivan was first appointed to a four-year term as a magistrate judge of the Superior Court on June 29, 2009, and subsequently re-appointed to successive second and third four-year terms.  Prior to her appointment as a magistrate judge, Judge Gallivan had been employed by the Government of the Virgin Islands in several capacities, including chief labor negotiator and assistant attorney general, and was thus already a member of the Government Employees Retirement System ("GERS") at the time she commenced her judicial service.

¶ 3     During her second four-year term, on January 23, 2015, Judge Gallivan sent a letter to Austin Nibbs, the administrator of the Government Employees Retirement System ("GERS"),

---

[2] The legislation creating the Magistrate Division of the Superior Court. Act No. 6919, referred to the judicial officers assigned to the Magistrate Division as "magistrates."  However, with the enactment of Act No. 7888 on July 30, 2016, the Legislature changed the name of the position from "magistrate" to "magistrate judge."  *See* Act No. 7888 § 15.  To minimize confusion, the position shall be referred to as "magistrate judge" throughout, even when addressing events that occurred prior to July 30, 2016.

inquiring as to whether she was classified as a Tier I or Tier II member of the Judiciary for retirement purposes. Judge Gallivan made this inquiry because she had heard a news report that the GERS Board had recently voted to implement changes to the judicial retirement system, including raising contribution rates for members of the Judiciary from 11 percent to 14 percent, and setting the annuity rate for Tier II members at 5 percent of compensation for each year of judicial service, in contrast to the 30 percent of compensation for each "term" provided to Tier I members. On January 27, 2015, Nibbs responded that GERS classified Judge Gallivan as a Tier II member. Judge Gallivan replied on January 29, 2015, to dispute that determination, contending that she should instead be classified as a Tier I member, and asserting that GERS had previously represented to her that she was a Tier I member of the system. However, on January 30, 2015, Nibbs advised that the classification as a Tier II member would stand, and indicated to her that she could appeal that determination to the GERS Board.

¶ 4     Judge Gallivan filed an appeal petition with the GERS Board on March 9, 2015. In her petition, Judge Gallivan maintained that GERS had misclassified her as a Tier II member rather than as a Tier I member, and alleged that this misclassification resulted in her annuity being reduced for each completed four-year term from 30 percent to 20 percent. Moreover, Judge Gallivan argued that the contribution rate increase from 11 percent to 14 percent constituted an unlawful reduction of a judicial officer's compensation during her term of office.

¶ 5     The GERS Board appointed a hearing examiner, who held hearings on May 5, 2016, September 22-23, 2016, and December 1, 2016. The hearing examiner submitted findings of fact conclusions of law, and recommendations to the GERS Board on May 15, 2017. On June 1, 2017, the GERS Board issued its decision, which affirmed Judge Gallivan's classification as a Tier II member, but agreed that the appropriate contribution rate was 11 percent for her first two terms of

service as a magistrate judge, and that she should receive a refund for any contributions paid in excess of that rate.

¶ 6    Judge Gallivan filed a petition for writ of review with the Superior Court on June 21, 2017, pursuant to the general writ of review statute, 5 V.I.C. § 1421 et seq.  The petition sought review of the GERS Board's June 1, 2017 decision regarding her judicial retirement benefits.  While her petition was pending, Judge Gallivan was reappointed to a third four-year term as a magistrate judge.

¶ 7    On October 13, 2017, the GERS Board issued an addendum to its decision, which determined the specific amount of Judge Gallivan's refund.  The GERS Board determined that Judge Gallivan had made an aggregate of $9,590.48 in overpayments.  With respect to interest, the GERS Board determined the amount of interest owed by considering GERS's "investment rate of return" for each year of contributions, which it identified as -2.1 percent in 2015, 7.2 percent in 2016, and 7.7 percent in 2017.  Applying these rates, the GERS Board determined that she should receive $517.25 and $772.83 in interest for 2016 and 2017, but have $70.96 subtracted for the negative rate of return in 2015, for an aggregate interest award of $1,219.12.  Judge Gallivan asserted in the writ of review proceeding that the GERS Board improperly calculated the interest owed and argued that she should receive 9 percent interest pursuant to 11 V.I.C. § 951(a).

¶ 8    On February 5, 2018, the Superior Court determined that it possessed jurisdiction to review the GERS Board's determinations.  After ordering briefing by the parties and holding a hearing, the Superior Court issued an April 26, 2019 opinion and order which affirmed in part and reversed in part the determinations of the GERS Board.  The Superior Court agreed with the GERS Board that Judge Gallivan is a Tier II member but nevertheless concluded that she was entitled to a 30 percent annuity for her first term because an annuity rate for Tier II members had not been set

prior to January 2015,[3] and that the annuity rate for Tier I members would therefore apply. However, the Superior Court held that Judge Gallivan was entitled to a 5 percent per year annuity for her second term because although her second term had commenced in June 2013, her retirement benefits for that term did not vest until the conclusion of that term in June 2017. With respect to interest on her excess contributions, the Superior Court determined that Judge Gallivan was not entitled to statutory interest, but concluded that she was entitled to interest pursuant to a restitution theory, in which Judge Gallivan should receive the interest earned by GERS on her excess contributions, and that she not be responsible for any losses. Thus, the Superior Court ordered that GERS pay Judge Gallivan the $70.96 in negative interest that it had deducted from its $10,809.60 interest award, for a total of $10,880.56. Finally, the Superior Court rejected a claim by Judge Gallivan that her due process rights were violated and determined that certain other constitutional arguments she had made before the GERS Board were waived.

¶ 9 Shortly after the Superior Court issued its April 26, 2019 opinion and order, on May 14, 2019, the Legislature confirmed Judge Gallivan to a six-year term as the Superior Court judge assigned to the Family Division in the District of St. Croix. Judge Gallivan timely filed a notice of appeal with this Court on June 26, 2019. *See* V.I. R. APP. P. 5(a)(1) ("In a civil case . . . if the Government of the Virgin Islands . . . or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry [of the judgment].").

---

[3] In its April 26, 2019 opinion, the Superior Court states that the GERS Board set the judicial annuity rate on January 21, 2015. However, the minutes of the GERS Board indicate that the meeting in which it took this action occurred on January 22, 2015. Nevertheless, whether the GERS Board set these rates effective January 21, 2015, or January 22, 2015, is irrelevant to this case.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

¶ 10    The Supreme Court of the Virgin Islands may review "all appeals from the [final] decisions of the courts of the Virgin Islands established by local law[.]" 48 U.S.C. § 1613a(d); *see also* 4 V.I.C. § 32(a). Because the Superior Court's April 26, 2019 opinion and order resolved all claims between the parties, it constitutes a final judgment. *See Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 434 (V.I. 2013).

¶ 11    The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *St. Thomas–St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007).

### B. Superior Court Jurisdiction

¶ 12    In her appellate brief, Judge Gallivan only challenges two aspects of the Superior Court's decision: its holding that she is a Tier II member, and its conclusion that she is only entitled to a 20-percent annuity upon completion of her second four-year term as a magistrate judge. But before considering the merits of Judge Gallivan's appeal, this Court must be satisfied not only that it possesses appellate jurisdiction to review the Superior Court's April 26, 2019 opinion and order, but that the Superior Court properly exercised jurisdiction to review the GERS Board's June 1, 2017 decision. *See Virgin Islands Waste Management Auth. v. Bovoni Investments, LLC*, 61 V.I. 355, 363 (V.I. 2014) ("[I]t is well established that a court may consider the issue of subject matter jurisdiction *sua sponte*." (internal quotation marks and citation omitted)); *In re Guardianship of Smith*, 54 V.I. 517, 527 (V.I. 2010) (an appellate court may *sua sponte* raise questions regarding a trial court's subject matter jurisdiction). This is because "[w]hen a lower court does not have jurisdiction over the case before it, an appellate court also lacks jurisdiction to review the merits

of the claim." 4 Am.Jur.2d *Appellate Review* § 75 (Westlaw 2008) (collecting cases).

¶ 13    Neither this Court nor the Superior Court are courts constituted by Congress pursuant to Article III of the United States Constitution, but instead have been established by the Virgin Islands Legislature pursuant to the Revised Organic Act and Article IV of the United States Constitution. Consequently, concepts that derive from Article III's case and controversy requirement, such as that a party must possess standing to bring a case, are not jurisdictional in matters brought in the courts of the Virgin Islands. *See Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 564 (V.I. 2012). Nevertheless, when the Legislature enacts legislation to limit the adjudicatory authority of the Superior Court or this Court—such as by placing express limitations on who may invoke judicial review—those limitations must be treated as jurisdictional. *See Brooks v. Gov't of the V.I.*, 58 V.I. 417, 425-26 (V.I. 2013).

¶ 14    Judge Gallivan initiated the underlying action to obtain review of the GERS Board's June 1, 2017 decision pursuant to the general writ of review statute, codified at 5 V.I.C. § 1421 et seq. That statute provides that

> Any party to any proceeding before or by any officer, board, commission, authority, or tribunal may have the decision or determination thereof reviewed for errors therein as prescribed in this chapter and rules of court. Upon the review, the court may review any intermediate order involving the merits necessarily affecting the decision or determination sought to be reviewed.

5 V.I.C. § 1421. The right to seek review of a decision under the general writ of review statute, however, is not unlimited. The statute further provides that

> The writ of review shall be allowed in all cases where there is no appeal or other plain, speedy, and adequate remedy, and where the officer, board, commission, authority, or tribunal in the exercise of his or its functions appears to have exercised such functions erroneously, or to have exceeded his or its jurisdiction, <u>to the injury of some substantial right of the plaintiff</u>.

5 V.I.C. § 1422 (emphasis added). Thus, section 1422, by its own terms, does not allow for

*Gallivan v. GERS*                  2025 VI 11
S. Ct. Civ. No. 2019-0056
Opinion of the Court
Page 8 of 31

unlimited judicial review of all decisions rendered by officers, boards, commissions, authorities, or tribunals; rather, such review may only be brought by a plaintiff who has suffered an injury to some substantial right as a result of the administrative decision. Moreover, Superior Court Rule 15, which was promulgated in accordance with section 1421, implements section 1422's injury requirement by providing that the person bringing the petition have been "aggrieved by the decision." SUPER. CT. R. 15(a). Thus, for the Superior Court to possess jurisdiction to review the June 1, 2017 decision under the general writ of review statute, Judge Gallivan, as the party attempting to invoke the Superior Court's jurisdiction, bore the burden of affirmatively proving that the GERS Board injured a substantial right. *See Mendez v. Gov't of the V.I.*, 56 V.I. 194, 204 (V.I. 2012).

¶ 15    As this Court has previously held, a person is considered to be "aggrieved" for purposes of the general writ of review statute when such person has "a legally recognized interest that is injuriously affected by an act of a judicial or quasi judicial body." *Williams v. Gov't of the V.I.*, 54 V.I. 590, 597 (V.I. 2011) (quoting MERRIAM WEBSTER'S DICTIONARY OF LAW 354 (2005)). Importantly, this Court has expressly held that it is not sufficient for a board to issue an adverse decision that merely *claims* to affect such an interest: to be injured or aggrieved, the petitioner must have actually suffered a real and tangible loss as a result of the ruling. *Williams*, 54 V.I. at 598 (holding that a doctor was not "aggrieved," for purposes of the general writ of review statute, by an order revoking his license to practice medicine when that order had been stayed and could not be enforced by the board).

¶ 16    In its June 1, 2017 decision, the GERS Board classified Judge Gallivan as a Tier II member and found that she is entitled to a 5 percent annuity for each year of judicial service. But the record contains absolutely no evidence that Judge Gallivan has elected to retire and collect a judicial

retirement annuity – on the contrary, in the years since bringing this action, she successfully sought reappointment to a third term as a magistrate judge, as well as elevation to higher judicial office.

¶ 17    Because Judge Gallivan has not retired or indicated that she intends to retire imminently, the GERS Board's decision to classify her as a Tier II member may appear to have not resulted in any actual, tangible harm.   The judicial retirement statute for Tier I members provides that a judicial officer is entitled to the following benefits upon retirement:

(A) after one (1) term in office, 30% of his compensation while in office;
(B) after two (2) terms in office 60% of his compensation while in office;
(C) after three (3) terms in office, 90% of compensation while in office; and
(D) after 20 years in office, 100% of his compensation while in office.

3 V.I.C. § 733(e)(1).   In her appellate brief, Judge Gallivan maintains that if she were classified as a Tier I member, she would qualify for a 60-percent annuity due to completion of two four-year terms of service as a magistrate judge. Even if this Court were to assume—without deciding—that Judge Gallivan's interpretation of section 733(e) with regard to her magistrate judge service is correct, as a Tier I member, Judge Gallivan would not receive an annuity for any portion of her uncompleted third term as a magistrate judge.[4]  Therefore, if she were classified as a Tier I member, Judge Gallivan would not be entitled to a further increase in her judicial retirement annuity until completion of her six-year term as a Superior Court judge, which would not occur until 2025.  But as a Tier II member, Judge Gallivan would receive a 5-percent annuity for every year of service,

---

[4] Prior to October 25, 2015, the Tier I judicial retirement statute provided that "a member of the Judiciary shall receive credit at the rate of five percent (5%) for any fractional portion of any term that has not been completed," and defined "fractional portion" as "no less than one calendar year during any particular term. *See* Former 5 V.I.C. § 733(e)(2).  Effective October 25, 2015, this language was repealed and replaced with the current language of section 733(e)(2), which does not include the 5-percent annuity credit. *See* Act No. 7802 § 2(p)(4) (Reg. Sess. 2015).

whether or not those years were served as part of a completed term.[5] Notably, it appears that under the GERS Board's June 1, 2017 decision, Judge Gallivan would receive the same—or an even greater—annuity regardless of whether classified as a Tier I or Tier II member if she retired in 2027 or any year thereafter and would only incur tangible monetary harm in the form of a reduced retirement annuity if she separated from judicial office in 2025 or 2026, the only two years in which she would receive a higher annuity if classified as a Tier I member rather than a Tier II member.

¶ 18 Nevertheless, we conclude that Judge Gallivan is aggrieved by the June 1, 2017 decision, notwithstanding that circumstances exist in which it does not harm or may even benefit her. Certainly, courts typically decline jurisdiction to resolve retirement benefit disputes when the pertinent party has not actually retired. *See Auerbach v. Board of Educ.*, 136 F.3d 104, 109 (2d Cir. 1998) (holding that currently-employed teachers who sued school district over payment of retirement incentives "had suffered no injury in fact" because "these teachers had not retired and consequently, had not been denied any incentive benefits . . . under the retirement plan."); *In re Marriage of Gust*, 858 N.W.2d 402, 416 (Iowa 2015) (holding that issues relating to spousal support in retirement should not be adjudicated but deferred until retirement has actually occurred or is imminent, since "future retirement will ordinarily be considered to raise too many speculative issues," including "not know[ing] when [the party] will actually retire"). But the situation in this case is distinguishable, in that Judge Gallivan does not fully control her own retirement date: to continue to earn service credit for her judicial retirement annuity, Judge Gallivan must continue to

---

[5] In a January 2015 resolution, the GERS Board voted to establish the annuity rate of current members of the judiciary to 5% of compensation per year after one term, but further provided for the annuity rate of members of the judiciary appointed after January 21, 2015 to be set at 3.5% of compensation per year after one term.

serve as a full-time active judge. However, her current term is set to expire on May 19, 2025—six years after her confirmation by the Legislature—and pursuant to existing law she may only continue to sit as an active judge after that date until the sooner of (1) her renomination by the Governor and confirmation by the Legislature to a new six-year term; (2) the confirmation of a successor; or (3) 180 days. *See* 4 V.I.C. § 72(a). In addition to the possibility that Judge Gallivan might not be renominated or confirmed to an additional term, the GERS Board's June 1, 2017 decision may also directly influence whether Judge Gallivan seeks reappointment. Accordingly, we conclude that Judge Gallivan was aggrieved by the portion of the October 1, 2017 decision that classified her as a Tier II member and otherwise attempted to ascertain her retirement benefits.

### C. Calculation of Judicial Retirement Annuity

¶ 19    In its April 26, 2019 opinion, the Superior Court agreed with the GERS Board that Judge Gallivan is a Tier II member, but nevertheless determined that she was entitled to a 30-percent annuity for her first completed four-year term as a magistrate judge because an annuity rate for Tier II members had not been set prior to January 2015, and therefore the annuity rates for Tier I members continued to apply. However, although Judge Gallivan's second four-year term as a magistrate judge commenced in June 2013, the Superior Court declined to apply the Tier I annuity rate to those years of service because the Tier I statute vests benefits at the conclusion of a term. In her appellate brief, Judge Gallivan renews her argument that she is a Tier I member of GERS, and in the alternative maintains that her retirement benefits vested on June 29, 2009—the day she first assumed judicial office—and could not be changed thereafter even with respect to future terms. We address each issue in turn.

#### 1.  Tier Classification

¶ 20    In her appellate brief, Judge Gallivan argues that the Superior Court erred when it agreed

with the GERS Board that she is a Tier II member of the GERS, and maintains that her proper classification is as a Tier I member. To address this claim, we must first examine the history and structure of the pertinent retirement statutes.

¶ 21    The Legislature first authorized a retirement and benefit system for officials and employees of the Government of the Virgin Islands on June 24, 1959, when it passed Act No. 479, which became operative on October 1, 1959, and provided benefits to those who were employed in such a capacity on or after September 30, 1959. *See* 3 V.I.C. § 701 et seq. "Partially recognizing the enhanced status of the judicial branch of the territorial government in the creation of the Territorial Court," in December 1976 the Legislature enacted what would become Act No. 3924 and separated judicial pensions from the general retirement system for government employees, although it would repeal this legislation 29 days later. *See Joseph v. Gov't of the V.I.*, 576 F.Supp. 1335, 1337-38 (D.V.I. 1983). Nevertheless, 25 years later, on February 1, 2001, the Legislature enacted a distinct statutory scheme to provide retirement benefits to members of the Judiciary on different terms than those for other government employees. *See* Act No. 6391 § 2(l). This judicial retirement system was made available as an option to any person who became a member of the Judiciary after January 28, 1977. *See* 3 V.I.C. § 733(a)-(b). The judicial retirement statute provided that upon retirement judges would receive an annuity at the following rates:

> (A) after one (1) term in office, 30% of his compensation while in office;
> (B) after two (2) terms in office 60% of his compensation while in office;
> (C) after three (3) terms in office, 90% of compensation while in office; and
> (D) after 20 years in office, 100% of his compensation while in office.

3 V.I.C. § 733(e)(1).

¶ 22    At the time of enactment of this statute, the term Judiciary was defined to "mean[] the Judges of the Territorial Court of the Virgin Islands." Former 3 V.I.C. § 733(h). The statute does

not define the word "term," but at the time the Legislature established this judicial retirement system, the only judicial officers who were part of the Virgin Islands Judiciary were judges of the Territorial Court—since renamed the Superior Court—who all serve for six-year terms, *see* 4 V.I.C. § 73. However, as part of the legislation authorizing the establishment of the Supreme Court of the Virgin Islands, the Legislature amended section 733(h) on October 29, 2004, to include the justices of the Supreme Court within the definition of "Judiciary." *See* Act No. 6687 § 7.

¶ 23    Four years later, in response to growing concerns over the solvency of the retirement system, the Legislature enacted Act No. 6794, also known as the Retirement System Reform Act of 2005. Among its provisions, Act No. 6794 established a Tier II Retirement Benefits Program, which would apply to those who entered government employment on or after October 1, 2005. *See* 3 V.I.C. § 750 et seq. In addition, Act No. 6794 delegated greater authority to the GERS Board to set benefits and contribution rates for those enrolled in the Tier II program without legislative action. Those who were employed by the government on September 30, 2005, would continue to be governed by the original retirement statutes codified at 3 V.I.C. § 701 et seq., which became known as the Tier I Retirement Benefits Program. However, Act No. 6794 provided that all of the provisions of the Tier I retirement statutes would also be applicable to those enrolled in the Tier II program, unless provided otherwise in the Tier II statutes.

¶ 24    Act No. 6794 established special provisions for a Tier II retirement system for judicial officers as well. *See* 3 V.I.C. § 770*l*. The Tier II judicial retirement statute differs from the Tier I judicial retirement statute in one critical respect: it confers the GERS Board with the authority to set both the rate of contribution and the rate of accrual for judicial annuities. *See* 3 V.I.C. § 770*l*(d), (f)(1).

¶ 25    The Tier II judicial retirement statute further provided that "[e]ach person who becomes a member of the Judiciary after the date of enactment of [Act No. 6794], who is not a participant by previous appointment, shall automatically become a member of the system" unless they opted out within 90 days.  3 V.I.C. § 770*l*(b). However, although the Legislature had by this time authorized the creation of the Supreme Court of the Virgin Islands and amended the Tier I judicial retirement statute to include the justices of the Supreme Court within the definition of "Judiciary," *see* Act No. 6687, the Tier II statute defined the Judiciary as "mean[ing] the Judges of the Superior Court of the Virgin Islands."  Former 3 V.I.C. § 770*l*(i).

¶ 26    Over the next decade, the Legislature would on two separate occasions amend the definition of "Judiciary" in the judicial retirement statutes.  In 2007, as part of the legislation authorizing the creation of the Magistrate Division of the Superior Court, the Tier I statute was amended to include magistrate judges within the definition of "Judiciary."  *See* Act No. 6919 § 4. However, although the first magistrate judges commenced their terms on June 29, 2009, the Legislature did not amend the definition of "Judiciary" in the Tier II statute to include magistrate judges—as well as justices of the Supreme Court—until the passage of Act No. 7574 in 2013.  Yet while enacted in 2013, Act No. 7574 stated that this amendment to the definition of "Judiciary" in the Tier II statute would be retroactive to November 2, 2005.  *See* Act No. 7574 § 1(b).

¶ 27    Although Judge Gallivan entered judicial service for the first time on June 29, 2009, she maintains that she is a member of the Tier I program due to the plain text of the Tier I statute, which provides that the program is available to a person who becomes a member of the Judiciary after January 28, 1977.  *See* 3 V.I.C. § 733(a)-(b).  However, as noted above, the Tier II statute expressly provides that anyone who becomes a member of the Judiciary after the effective date of

Act No. 6794 becomes a part of the Tier II system.[6] 3 V.I.C. § 770*l*(b).  Essentially, Judge Gallivan

has taken the position that the failure of the Legislature to amend section 733(a)-(b) to expressly

prohibit those who became members of the Judiciary after the effective date of Act No. 6794 from

joining the Tier I program is legally significant.

¶ 28    Judge Gallivan's interpretation of the eligibility provisions of the judicial retirement

statutes is not supported by the rules of statutory construction.  It is well-established that "when

two statutes touch on the same subject, we give effect to both unless doing so would be

impossible." *Haynes v. Ottley*, 61 V.I. 547, 561 (V.I. 2014) (quoting *Ray v. Spirit Airlines, Inc.*,

767 F.3d 1220, 1225 (11th Cir. 2014)).  Here, it is impossible to give effect to both section 733(a)-

(b) and section 770*l*(b), since doing so would create the absurd result of Judge Gallivan being

automatically enrolled in both the Tier I program and the Tier II program simultaneously,

notwithstanding the fact that those programs have substantial and irreconcilable differences with

respect to how both annuity rates and contribution rates are determined.  *See Rothlein v. Armour*

*& Co.*, 377 F.Supp. 506, 510 (W.D. Pa. 1974) (rejecting an interpretation of language in a

collective bargaining agreement that would have led to the absurd result of certain employees

actively participating in two pension plans maintained by the same employer at the same time).

¶ 29    In the event of an irreconcilable conflict between two statutes that govern the same subject,

"the later-enacted statute generally takes priority over the older statute."  *V.I. Taxi Ass'n v. V.I.*

---

[6] In its April 26, 2019 opinion, the Superior Court identified October 1, 2005, as the effective date
of Act No. 6794, apparently because 3 V.I.C. § 750(b) provides that those who become members
of GERS on or after October 1, 2005, become members of the Tier II program.  However, Act No.
6794 was signed into law by the Governor on November 2, 2005.   Therefore, since the Tier II
judicial retirement statute expressly provides that it applies to those who entered judicial service
"after the date of enactment of this chapter," 3 V.I.C. § 770*l*(b), only those whose judicial service
began on or after November 2, 2005, are members of the Tier II system.  This distinction, however,
is irrelevant with respect to Judge Gallivan, since she began her judicial service on June 29, 2009.

*Port Auth.*, 67 V.I. 643, 666 n.16 (V.I. 2017) (citing *V.I. Pub. Servs. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 485 (V.I. 2008)). Because the Legislature enacted the Tier II judicial retirement statute in 2005 while it enacted the Tier I statute in 2001, the rules of statutory construction require that the Tier II statute control in the event of a conflict. Therefore, Judge Gallivan, having joined the Judiciary after the effective date of Act No. 6794, is a member of the Tier II program.

¶ 30      Similarly, there is no legal significance to the fact that on June 29, 2009—the date Judge Gallivan commenced her judicial service—the Tier II statute defined the Judiciary as "mean[ing] the Judges of the Superior Court of the Virgin Islands" without expressly referencing magistrate judges.[7] The Legislature has instructed that "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language," but that "[t]echnical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to their peculiar and appropriate meaning." 1 V.I.C. § 42. As noted earlier, the position of magistrate judge did not exist when the Legislature enacted the Tier II retirement statute; consequently, the Legislature could not have made a conscious and deliberate decision to distinguish between judges and

---

[7] In its April 26, 2019 opinion, the Superior Court concluded that magistrate judges were within the definition of "Judiciary" in the Tier II statute on June 29, 2009, because the Legislature provided in Act No. 7574 that the 2013 amendment would be retroactive to November 2, 2005. However, "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic," for "settled expectations should not be lightly disrupted" and "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994). Because retroactively transferring a judge from the Tier I program to the Tier II program would certainly affect the judge's substantive rights, *see Drayton v. Drayton*, 65 V.I. 325, 334 (V.I. 2016), the 2013 amendment, standing alone, cannot form the basis for a holding that Judge Gallivan has always been a member of the Tier II program.

magistrate judges when it chose the phrase "Judge of the Superior Court" to define the "Judiciary" in that statute. The word "judge" has been generally understood as referring to all judicial officers, regardless of their actual title. *See* BLACK'S LAW DICTIONARY 1005 (11th ed. 2019) (defining "judge" as "[a] public official appointed or elected to hear and decide legal matters in court" and alternatively as "a judicial officer who has the authority to administer justice"). Importantly, the statute establishing the Magistrate Division of the Superior Court expressly provides that magistrate judges "are judicial officers of the Superior Court." 4 V.I.C. § 122(d).

¶ 31    Given this background, the most sensible construction of the Tier II statute is that the Legislature intended for the word "judge" to be construed in accordance with its generally understood meaning and refer to all judicial officers. However, to the extent any doubt remains, this Court must consider the well-established rule of statutory construction that "no statute should be read literally if such a reading is contrary to its objective" or if "applying the statute's literal language leads to . . . absurd consequences or is otherwise inconsistent with the Legislature's intent." *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009). The Legislature established the Tier II system for the express purpose of bolstering the solvency of the retirement system. Moreover, when it created the position of magistrate judge, the Legislature expressly fixed the compensation of the position to be lower than that of a Superior Court judge, *see* 4 V.I.C. § 122(d). Interpreting the judicial retirement statutes, as they stood on June 29, 2009, to exclude new magistrate judges from the Tier II system and mandate their inclusion in the Tier I system—even though new judges were unquestionably members of the Tier II system—would not only be inconsistent with the purpose of Act No. 6794 by continuing to enroll new employees in the Tier I system, but also provide magistrate judges with better retirement benefits than judges and justices. Consequently, we hold that the Tier II statute never excluded magistrate judges, and that Judge Gallivan is

therefore a Tier II member of the GERS.

### 2. Calculation of Tier II Annuity Rates

¶ 32    As noted earlier, unlike the Tier I judicial retirement statute, the Tier II statute does not set forth the annuity rates for Tier II members.  Rather, the Tier II statute provides that the rates for such annuities shall be "determined by the Board of Trustees."  3 V.I.C. § 770*l*(f)(1).  However, as the parties and the Superior Court all correctly recognize, the GERS Board did not establish an annuity rate until January 2015, when it set the rate at 5 percent for each year of service.  In its April 26, 2019 opinion, the Superior Court concluded that in the absence of action by the GERS Board, the annuity rates set forth in the Tier I statute would continue to apply.  In reaching this decision, the Superior Court relied on the statute establishing the Tier II program, 3 V.I.C. § 750(e), which provides that "[a]ll provisions of chapter 27"—the chapter which includes the statutes governing the Tier I program—"are applicable to this chapter, except to the extent provided otherwise in this chapter."

¶ 33    This Court agrees.  As the Superior Court correctly observed, the Legislature, by enacting section 750(e), clearly manifested its intent for the statutes governing the Tier I program to continue to apply to the Tier II program except in the event of a conflict.  Nevertheless, one could argue that the Tier II judicial retirement statute conflicts with the Tier I statute in that the Tier I statute establishes annuity rates while the Tier II statute grants the GERS Board the authority to set rates, and that the failure of the GERS Board to exercise that authority is tantamount to it setting the annuity rate at zero.  But as explained earlier, "no statute should be read literally if such a reading is contrary to its objective" or if "applying the statute's literal language leads to . . . absurd consequences or is otherwise inconsistent with the Legislature's intent."  *Gilbert,* 52 V.I. at 356. The Legislature did not establish the Tier II program in order to preclude any judicial officers from

accruing annuity benefits; rather, the clear legislative intent was to address concerns about the solvency of the retirement system by permitting the GERS Board to adjust benefits and contributions without the approval of the Legislature. Consequently, the most reasonable interpretation is to construe sections 750(e) and 770*l*(f)(1) together, so that the annuity rates established in the Tier I statute continue to remain in effect until and unless the GERS Board exercises its authority to set different annuity rates.

¶ 34    In its April 26, 2019 opinion, the Superior Court, applying this construction of sections 750(e) and 770*l*(f)(1), determined that Judge Gallivan was entitled to a 30-percent annuity for completion of her first four years of service as a magistrate judge, on the basis that the Tier I statute provides that upon retirement, a member of the Judiciary would receive "a judicial annuity equal to . . . after one (1) term in office, 30% of his compensation while in office." 3 V.I.C. § 733(e)(1)(B). However, although the Tier I statute further provides for a 60-percent annuity after two terms in office, 3 V.I.C. § 733(e)(1)(B), the Superior Court concluded that Judge Gallivan was not entitled to a 60-percent annuity after completing eight years of service as a magistrate judge. The Superior Court did so on grounds that the GERS Board set the 5-percent per year annuity rate for Tier II members in January 2015. Although Judge Gallivan commenced her second four-year term as a magistrate judge in June 2013, the Superior Court determined that the GERS Board's January 2015 action applied to the entirety of her second four-year term because the Tier II statute provided at the time that "[v]esting in a service retirement annuity attaches upon completion of one term."[8] 3 V.I.C. § 770l*l*(f)(1). Thus, the Superior Court effectively construed the vesting

_____

[8] Prior to October 26, 2015, the Tier II statute simply provided that vesting in a service retirement annuity attaches upon completion of one term. However, effective with the enactment of Act No. 7802 on October 26, 2015, the Legislature amended this language to provide that only "all members of the Judiciary at the time of the effective date of this paragraph" are eligible for vesting

provision of the Tier II statute to provide that a judicial officer has no entitlement to an annuity until completion of each term, and that the GERS Board may therefore reduce judicial annuity accrual rates retroactively.

¶ 35    The Superior Court misinterpreted the vesting provisions of the Tier II statute, in that it has conflated the requirements for vesting in a service annuity with how the benefits of the service annuity are determined. As it correctly noted in its April 26, 2019 opinion, a right becomes "vested" when it can no longer be taken away without the recipient's consent, and thus a vested pension is one in which the recipient has a right to receive pension benefits even if no longer employed at the time of retirement. *See Gallivan v. Gov't Employees Retirement Sys.,* 70 V.I. 475, 494 (V.I. Super. Ct. 2019) (citing BLACK'S LAW DICTIONARY 1699 (9th ed. 2009)). This, however, is a different concept from the accrual of benefits. As the United States Court of Appeals for the Third Circuit succinctly explained,

> The concepts of accrued on the one hand, and vested or "nonforfeitable," on the other, are related, but not the same. A participant becomes fully vested when he gains a nonforfeitable right to receive his entire accrued benefit. Vesting provisions do not affect the amount of the accrued benefit, but rather govern whether all or a portion of the accrued benefit is nonforfeitable. Accrual provisions provide a formula for calculating the amount of the normal retirement benefit which an employee has earned at any given time.

*Hoover v. Cumberland, Md. Area Teamsters Pension Fund*, 756 F.2d 977, 983-84 (3d Cir. 1985); *see also Stewart v. National Shopmen Pension Fund*, 730 F.2d 1552, 1562 (D.C. Cir. 1984) ("The 'vesting schedule' specifies the time at which an employee obtains his nonforfeitable right to a particular percentage of his accrued benefit. It does not provide any formula or schedule for

---

after one term, and that "all members of the Judiciary appointed after the effective date of this paragraph" vest in a retirement annuity "upon completion of ten years of service." 3 V.I.C. § 770*l*(f)(2). However, because Judge Gallivan was a member of the Judiciary on October 26, 2015, the changed language has no effect on this case.

determining the amount of the accrued benefit. Thus, 'vesting' governs when an employee has a right to a pension; 'accrued benefit' is used in calculating the amount of the benefit to which the employee is entitled.").

¶ 36     Both the Tier I and Tier II judicial retirement statutes provide that a member of the Judiciary who leaves judicial service before completing one term shall have his or her contributions to the retirement system returned and may not thereafter receive service credit for that service until he or she re-joins the Judiciary and pays the returned contributions back into the system. *See* 3 V.I.C. §§ 733(f), 770*l*(g). Thus, by providing that "[v]esting in a service retirement annuity attaches upon completion of one term," 3 V.I.C. § 770*l*(f)(1), the Legislature has simply provided that a member of the Judiciary who has completed one term becomes entitled to an annuity when he or she voluntarily or involuntarily separates from judicial service. This is bolstered by the fact that section 770*l*(f)(1) provides for vesting "upon completion of <u>one</u> term." (Emphasis added). Had the Legislature intended, as the Superior Court concluded, for "a judiciary member's vested right in the retirement annuity [to] attach[] at the completion of each judicial term," 70 V.I. at 494, it would have provided that vesting occurs upon completion of "each term" instead of "one term."

¶ 37     The construction adopted by the Superior Court is problematic in another respect, in that it would permit the reduction of a judicial officer's compensation during a term of service notwithstanding the fact that such compensation cannot be lawfully reduced without his or her consent. *See* 4 V.I.C. §§ 29(c), 72(c), 122(d). In the Virgin Islands a judicial pension constitutes deferred compensation, the terms of which "vest under legislation in effect upon the commencement of service" and cannot be involuntarily reduced during the term of the judicial officer. *Joseph v Gov't of the V.I.*, 576 F.Supp. 1335, 1340 (D.V.I. 1983). Although the Superior

Court recognized these authorities, it concluded that the language in section 770*l*(f) providing that the vesting provisions apply "[n]otwithstanding any other law" trumped those authorities. This reasoning, however, is circular, in that there would be no conflict between section 770*l*(f)(2), the *Joseph* decision, and sections 72(c) and 122(d) if section 770*l*(f)(2) is interpreted to mean what it says: that vesting occurs "upon completion of <u>one</u> term." *See McIntosh v. People*, 57 V.I. 669, 685-86 (V.I. 2012) (providing that general statute and a later-enacted specific statute should be construed to avoid any conflict, unless "such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all") (quoting *V.I. Public Servs. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 486 (V.I. 2008)); *see also Mitchell v. Mullgrav*, 67 V.I. 953, 963 (V.I. 2017) (noting that statutes must be construed, "if fairly possible," to avoid an unconstitutional effect) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 237-38 (1998)). Therefore, to the extent the GERS Board's 5-percent per year annuity rate is less favorable than the annuity rate Judge Gallivan would otherwise have received had the GERS Board not acted, the Superior Court erred when it construed the vesting provisions of the Title II statute to authorize the GERS Board to retroactively apply that rate to Judge Gallivan without her consent.

¶ 38    It is not readily apparent, however, that the 5-percent per year annuity rate established by the GERS Board is less favorable. Judge Gallivan maintains in her appellate brief that—if she is a Tier II member entitled to have her annuity calculated under the Tier I plan due to the GERS Board not acting prior to the start of her second four-year term—she should receive the annuity provided for in 3 V.I.C. § 733(e)(1), which provides "that after two (2) terms in office" a judicial officer receive "60% of his compensation while in office." According to Judge Gallivan, she qualifies for the 60-percent annuity rate because she completed two four-year terms as a magistrate judge.

¶ 39     The unstated assumption underlying Judge Gallivan's reasoning is that the word "term" as it is used in section 733(e) refers to the four-year term of a magistrate judge.  However, as emphasized earlier, the word "term" is not defined in section 733(e) or anywhere else in the Tier I statute.  The lack of a definition is not surprising, for when the Legislature enacted the Tier I judicial retirement statute, the Magistrate Division of the Superior Court and the Supreme Court of the Virgin Islands did not exist.  Thus, at the time section 733(e) became law, only a single judicial officer existed within the Virgin Islands Judiciary: judges of the Superior Court, who all served for six-year terms.  This arrangement did not change until years later, when the Legislature established the Supreme Court of the Virgin Islands consisting of justices serving 10-year terms, and the Magistrate Division of the Superior Court consisting of magistrate judges serving 4-year terms.  The question, then, is whether the Legislature intended for the word "term" in section 733(e) to have a variable meaning depending on whether the judicial officer in question is a justice, judge, or magistrate judge, or whether it instead intended for the word "term" to have a consistent meaning with respect to all judicial officers.

¶ 40     As previously noted, it is well-established that a statute should not be construed in a manner that would result in absurd consequences or otherwise be inconsistent with the Legislature's intent. *Gilbert,* 52 V.I. at 356.  When it created the Supreme Court and the Magistrate Division, the Legislature deliberately arranged the courts in a pyramid, with the Supreme Court at the top, the Superior Court in the center, and the Magistrate Division at the foundation, with each successive level empowered to exercise greater judicial power than the level below.  *Gov't of the V.I. v. Connor*, 60 V.I. 597, 604 (V.I. 2014).  This arrangement is reflected in the term lengths established by the Legislature for each judicial officer, with justices serving ten years, judges serving six years, and magistrate judges serving four years.  It is also reflected in the compensation structure the

Legislature established for the Judiciary, with magistrate judges receiving a salary equal to 85 percent of a judge's salary and justices receiving salaries that exceed those of a judge. *See* 4 V.I.C. §§ 29(a), 122(d). Thus, the Legislature has manifested a clear intent to provide those in higher judicial offices with greater compensation, as well as stronger job security in the form of longer terms, so as to incentivize qualified individuals to accept those positions of greater responsibility.

¶ 41 Interpreting the word "term" in section 733(e) to mean different lengths of time depending on whether the judicial officer is a justice, judge, or magistrate judge is both inconsistent with the intent of the Legislature as to how those positions should be compensated and would lead to absurd results. If "term" were interpreted in such a way, a magistrate judge would receive a 30-percent annuity after serving four years, a 60-percent annuity after serving eight years, and a 90-percent annuity after serving twelve years, yet would not receive a 100-percent annuity until eight years after that, upon serving twenty years.

¶ 42 In contrast, a judge would receive a 30-percent annuity at six years, a 60-percent annuity at twelve years, and a 90-percent annuity at eighteen years – substantially less favorable retirement terms than magistrate judges, notwithstanding that judges exercise greater responsibility, are subject to nomination and confirmation process, and are by statute required to receive a higher salary than a magistrate judge. This creates a perverse incentive in which it would actually be in an individual's best financial interest to decline or postpone opportunities for elevation from the position of magistrate judge, in that an individual who serves twelve years as a magistrate judge would receive a substantially larger retirement annuity than an individual who served twelve years—or even longer—in a higher judicial office.[9] *See Clarkson v. Judges' Retirement Sys.*, 433

---

[9] For example, if a judge's salary were set at $100,000 and the salary of a magistrate judge was therefore fixed at $85,000, an individual who retired after serving twelve years as a judge would

N.W.2d 368, 373 (Mich. Ct. App. 1988) (refusing to apply the literal construction of a judicial retirement statute when doing so would create the absurd result of incentivizing judges to leave full-time positions in the judiciary at the earliest possible opportunity and accept intermittent assignments as a specially-appointed judge so that they could collect a substantially larger annuity).  This could not have been the intent of the Legislature, given that it expressly provided for magistrate judges to earn less than judges and for judges to earn less than justices.  *See Flemings v. Contributory Retirement Appeal Bd.*, 727 N.E.2d 1147, 1150 (Mass. 2000) (rejecting a proposed construction of certain words in a retirement statute because that construction "would create the absurd result that National Guard or Active Reserve members with less than ten years in the retirement system would be eligible for a benefit that formerly active duty members of the armed services who have less than ten years in the retirement system were not").

¶ 43    The absurdity of this construction of the word "term," however, is most readily apparent when considering the annuity rates for justices.  Under this proposed definition of "term," the statute would be read to provide for a justice to receive a 30-percent annuity after ten years, a 60-percent annuity after twenty years, and a 90-percent annuity after thirty years – even though section 733(e) expressly provides for a 100-percent annuity after twenty years of service.[10]  In other words,

_____

receive a $60,000 retirement annuity, while a similarly-situated individual who retired after twelve years of service as a magistrate judge would receive a $76,500 annuity.  Even more perversely, because judicial retirement annuities are calculated based on the highest rate of compensation ever received while serving as a member of the Judiciary, *see* 3 V.I.C. § 733(e)(3), an individual who retired after serving thirteen years as a judge would receive a $65,000 retirement annuity, while an individual retiring after serving twelve years as a magistrate judge and one year as a judge would receive a $95,000 annuity.

[10] The result is even more absurd when one considers that the original legislation creating the Supreme Court provided for a justice to serve an initial ten-year term, and if reappointed to serve a second term that would last indefinitely while serving in good behavior.

*Gallivan v. GERS*                  2025 VI 11
S. Ct. Civ. No. 2019-0056
Opinion of the Court
Page 26 of 31

if "term" were interpreted this way, not only would justices have the least favorable retirement terms of all judicial officers, but the statute would appear to provide for a justice who serves thirty years to actually receive a lower retirement annuity than a justice who serves only twenty years. This could not have possibly been the intent of the Legislature. *See Karem v. Bd. of Trustees of Judicial Form Retirement Sys.*, 293 S.W.3d 401, 405 (Ky. Ct. App. 2009) (rejecting retiree's proposed construction of the text of a retirement statute because it would lead to the absurd result of the retiree receiving an annuity that greatly exceeded the salary of the office he held).

¶ 44    These absurd consequences are avoided, however, if the word "term" is construed to mean what it unquestionably meant when section 733(e) was first enacted by the Legislature: six years. Such an interpretation would effectuate the original intent of the Legislature, given that at the time of enactment all members of the Virgin Islands Judiciary served six-year terms. It would also not be inconsistent with the Legislature's subsequent enactments providing for justices to receive higher compensation than judges and for judges to receive higher compensation than magistrate judges, and such construction would not create any absurd results with respect to the annuity schedule itself. Construing a term to mean six years would also parallel the structure of the statute for legislative retirements, which provides for vesting of retirement benefits "upon completion of 6 years of credited service." 3 V.I.C. § 714(e).

¶ 45    Construing "term" in section 733(e) to mean six years even with respect to magistrate judges, Judge Gallivan's first "term" for retirement purposes concluded in June 2015, at which point she became entitled to a 30-percent annuity. However, Judge Gallivan did not become entitled to a further increase until the conclusion of her second "term" in June 2021, when she became eligible for the 60-percent annuity authorized by section 733(e)(1)(B). Judge Gallivan, therefore, benefits from retroactive application of the GERS Board's January 2015 resolution, in

that it provides her greater benefits than the Tier I accrual schedule. Pursuant to the January 2015

resolution, Judge Gallivan further became eligible for a 55-percent annuity in June 2020 and a 60-

percent annuity in June 2021. Therefore, since Virgin Islands law only prohibits reductions in a

judicial officer's compensation during the current term of office, but permits an increase, Judge

Gallivan's annuity benefits should be calculated in accordance with the January 2015 resolution

through the conclusion of her second term.[11]  Thus, we reverse this portion of the Superior Court's

April 26, 2019 opinion and order pertaining to calculation of retirement benefits, and direct that

the pertinent portion of the June 1, 2017 decision of the GERS Board be affirmed, albeit for

different reasons than articulated by GERS. *Compare, e.g.*, *Seales v. Devine*, 2008 V.I. Supreme

LEXIS 23, at *4, *6 (V.I. March 3, 2008) (unpublished) (when applying a "plenary standard of

review," this Court may affirm the judgment of a trial court for a "different reason" premised on

grounds other than those relied on by the trial court, where the record before the trial court presents

all of the pertinent facts that enable this Court to "perform the same test the Superior Court would

have performed").

      3.  <u>Effect of Failure to Appeal Annuity Calculation for Initial Retirement Term</u>

¶ 46    The above analysis nevertheless does not end this Court's inquiry.  As noted earlier, Judge

Gallivan has appealed only the portion of the Superior Court's April 26, 2019 opinion and order

that concluded that she was entitled to a 20-percent annuity for completion of her second four-year

term as a magistrate judge.  Judge Gallivan, however, did not appeal from the Superior Court's

determination that she is entitled to a 30-percent annuity for completion of her first four-year term

---

[11] Because both the GERS Board's decision and the Superior Court's opinion only determined Judge Gallivan's retirement benefits with respect to her first two terms as a magistrate judge, our holding herein expresses no opinion as to how her benefits may have changed due to her subsequent judicial service.

as a magistrate judge – nor would one expect her to take such an appeal, in that the Superior Court ruled in her favor on that claim. But while GERS could have elected to appeal from that portion of the April 26, 2019 opinion and order, it did not do so.

¶ 47     The failure of either party to appeal raises the question of what relief this Court may order. As explained above, the Superior Court erred when it effectively accepted Judge Gallivan's position that a "term" as that word is used in section 733(e) meant four years rather than six years. Thus, while the Superior Court held that Judge Gallivan was entitled to a 30-percent annuity for her service from June 2009 through June 2013, the correct ruling would have been that she is entitled to a 30-percent annuity for her service from June 2009 through June 2015.

¶ 48     Typically, when the appellee fails to take a cross-appeal and adjudication of the appellant's appeal would result in the appellant receiving lesser relief than provided for at trial, this Court will nevertheless affirm the judgment, rather than modify it in a way that prejudices the appellant. This Court has adopted this rule on a theory that an appellee should not receive greater relief on appeal than that awarded at trial when the appellee had the opportunity to file a notice of cross-appeal, but failed to do so. *See Percival v. People*, 62 V.I. 477, 487 (V.I. 2015); *Better Bldg. Maint. of the V.I. v. Lee*, 60 V.I. 740, 762 (V.I. 2014); *People v. Ward*, 55 V.I. 829, 841 (V.I. 2011). Therefore, under ordinary circumstances, this Court would not disturb the Superior Court's determination that Judge Gallivan should receive a 30-percent annuity for her service from June 2009 through June 2013, when GERS failed to appeal from that decision.

¶ 49     However, this case differs from this Court's prior precedents in one important respect: the question of what annuity Judge Gallivan is entitled to receive for her second "term" pursuant to section 733(e) is not one which can be decided in a vacuum but is necessarily dependent on and intertwined with the question of when her first "term" concluded. While the Superior Court agreed

with Judge Gallivan that her first "term" lasted from June 2009 through June 2013, her "term" for section 733(e) purposes actually concluded in June 2015. It is not clear how this Court could even go about faithfully applying Virgin Islands law to calculate the annuity that Judge Gallivan is entitled to for her second "term" while simultaneously not disturbing the Superior Court's erroneous determination of her first term. Would this Court accept the Superior Court's determination that Judge Gallivan's first term for retirement purposes concluded in June 2013, and simply assume that her second term occurred immediately thereafter and concluded in June 2019? Or would this Court calculate Judge Gallivan's second term as commencing in June 2015 and concluding in June 2021, and effectively treat the two-year period from June 2013 to June 2015 as not being part of a "term" at all? Neither of these approaches has any basis whatsoever in Virgin Islands law and would effectively constitute this Court re-writing the retirement statutes in a way that treats Judge Gallivan differently from any similarly-situated judicial officers, such as the three other magistrate judges who entered judicial service on the same day she did. Such differential treatment would raise serious constitutional concerns. *See* 48 U.S.C. § 1561 ("No law shall be enacted in the Virgin Islands which shall deprive any person of life, liberty, or property without due process of law or deny to any person therein equal protection of the laws."). Moreover, it would in effect allow Judge Gallivan and GERS to implicitly stipulate to the law by omission, a practice that this Court has repeatedly rejected. *See Heywood v. People*, 63 V.I. 846, 855 (V.I. 2015); *Simmonds v People*, 59 V.I. 480, 493 (V.I. 2013). Additionally, unlike other cases where this Court invoked the cross-appeal rule—all of which involved criminal prosecutions or civil actions involving private parties—the Superior Court's erroneous determination, if sustained,

could result in the disbursement of government funds in a manner contrary to law.[12] *See* 5 V.I.C. § 80 (providing that a taxpayer may maintain an action to restrain the wrongful disbursement of territorial funds).

¶ 50    Under these extremely unusual circumstances, we disregard the Superior Court's erroneous calculation in its entirety, including the portion which has not been appealed.  The rule that this Court will not grant an appellee greater relief than that provided by the trial court unless a cross-appeal is taken is not a jurisdictional one, but is a rule created by this Court to further interests of judicial administration.  On the contrary, the statutes outlining the appellate jurisdiction of this Court expressly provide that "[u]pon an appeal from a judgment or an order, the Supreme Court may reverse or affirm, wholly or in part, or may modify the judgment or order appealed from, and each interlocutory judgment or intermediate or other order that it is authorized to review, and as to any or all of the parties." 4 V.I.C. § 32(c).

### III. CONCLUSION

¶ 51    The Superior Court possessed jurisdiction under the general writ of review statute to review the portion of the GERS Board's June 1, 2017 decision pertaining to calculation of Judge Gallivan's judicial retirement annuity.  Although Judge Gallivan has not retired, she remains aggrieved by the June 1, 2017 decision because the date of her retirement is not entirely within her control and knowledge of her retirement benefits may impact her decision to seek reappointment to a second term as a Superior Court judge.

¶ 52    With respect to the merits, we affirm the determination of the Superior Court that Judge

---

[12] As explained in the analysis of the Superior Court's jurisdiction, whether Judge Gallivan would ultimately collect an annuity greater than authorized by the retirement statutes is dependent on when she retires from judicial service, since she could potentially accrue enough additional years of service so as to retire with a 100-percent annuity even if the annuity were properly calculated.

Gallivan is a Tier II member of the retirement system, but that the annuity accrual rates set forth in the Tier I statute remained in effect for Tier II members during the period in which the GERS Board failed to set the accrual rates in accordance with the Tier II statute. Nevertheless, we hold that the Superior Court committed numerous errors when it calculated Judge Gallivan's annuity under the Tier I statute, including defining her term for retirement purposes as being four years rather than six years. Because Judge Gallivan would ultimately be entitled to the same or greater annuity under the 5-percent per year accrual rate established by the January 2015 resolution were it to be given retroactive effect than she would if her annuity were calculated under the Tier I statute, we hold that Judge Gallivan's annuity should be calculated pursuant to the January 2015 resolution because it does not constitute a reduction in Judge Gallivan's benefits. Therefore, we reverse the portion of the Superior Court's April 26, 2019 opinion and order pertaining to the calculation of Judge Gallivan's annuity, and direct that the June 1, 2017 decision of the GERS Board be affirmed on that subject, albeit for different reasons than those articulated by GERS.

**Dated this 16th day of April, 2025.**

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By:** _____/s/ Reisha Corneiro_____
     **Deputy Clerk II**
**Dated**: _____April 16, 2025_____